# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3673

_____

| | |
|---|---|
| Michael Ganley; Manuel J. Granroos; Michael A. Green; Daniel B. Grout; Thomas Homa, | * * * * |
| Appellants, | * * |
| v. | * Appeal from the United States * District Court for the District * of Minnesota. |
| Minneapolis Park and Recreation Board, | * * |
| Appellee. | * * * |

_____

Submitted: April 2, 2007
Filed: July 3, 2007

_____

Before LOKEN, Chief Judge, BEAM, and RILEY, Circuit Judges.

_____

BEAM, Circuit Judge.

The appellants, all former officers of the Minneapolis Police Department (MPD) who retired from the MPD to become officers with the Minneapolis Park and Recreation Board (Park Board), appeal the district court's[1] grant of summary judgment in favor of the Park Board. We affirm.

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

## I.  BACKGROUND

Michael Ganley and four other former MPD police officers sued the Park Board, alleging that the Park Board violated their equal protection and due process rights under the United States and Minnesota Constitutions by denying them higher initial placement on the salary schedule and more vacation time when they started their employment as police officers with the Park Board.  Each appellant was hired by the MPD *before* June 15, 1980, which means he was subject to the Minneapolis Police Relief Association (MPRA) pension program.  Other former MPD officers referenced in this lawsuit also started with the Park Board on the same day as the appellants.  These other MPD officers were hired by the MPD *after* June 15, 1980, requiring their participation in the Public Employee Retirement Association (PERA) pension plan.

The Police Officers' Federation of Minneapolis (Federation) represents the officers of the Park Board and the MPD but in separate collective bargaining units.  The Park Board and the MPD have contract provisions governing employee transfers.  The Park Board's provision, section 7.7(b) (which is substantially similar to the MPD's provision) reads:

> Transfers between the [MPD] and the [Park Board] are not permitted.  However, sworn personnel employed by the [MPD] may be eligible to be considered as a lateral entry candidate for the classification of Patrol Officer in accordance with the terms set forth herein.  Notwithstanding any provisions of Section 7.7(a), to the contrary, if a Minneapolis Police Officer is hired as a Park Police patrol officer, time served in the [MPD] shall be included as Department seniority for the purpose of determining the employee's vacation accrual and placement on the salary schedule.

Under this provision MPD officers who become Park Board officers lose their rank and seniority but are given credit for their years of service for determining vacation accrual and placement on the salary schedule.

-2-

In 2003, the Park Board posted positions for officers. The MPD officers referenced in this lawsuit applied and were hired. The appellants retired from the MPD and cashed out their vacation leave, sick leave, and compensatory time banks before being hired by the Park Board. In contrast, the other MPD officers started with the Park Board without first retiring from the MPD. Accordingly, they transferred without any break in service and were given credit, pursuant to section 7.7(b) of the collective bargaining agreement, for their prior years of service to the MPD for the purpose of placement on the Park Board's salary and vacation leave accrual schedules. The appellants did not receive the benefit of section 7.7(b)'s provisions because the Park Board determined that by retiring they had separated from their MPD employment and their time banks had been liquidated. The difference between these two groups is that the appellants were subject to the MPRA pension plan and the others were subject to the PERA pension plan, and the former group retired before moving to the Park Board and the latter group did not.

The appellants claim that they were "forced" to retire, noting that the separation form they were given already had the "retirement with severance" option pre-checked. The Park Board claims the appellants elected to retire.

Minnesota Statute § 423B.12, which is part of the statutory provisions addressing Minneapolis police pensions, states "[a] person who has ceased to be an active member of the association or has knowingly failed or refused to retire, is entitled only for the refund in an amount equal to $100 per year of service credit, payable in a lump sum." The appellants assert that it was the MPRA's position that this law dictated that a person who ceases employment with the MPD while eligible to retire, and does not retire, will forfeit their pension rights and be entitled only to a small lump sum reimbursement. Thus, the appellants claim Minnesota law also effectively required them to retire when leaving employment with the MPD before beginning employment with the Park Board.

The Federation refused to file a grievance on the appellants' behalf when asked to do so because it determined they were not MPD officers within the meaning of section 7.7(b) at the time the Park Board established their vacation and salary placement. This lawsuit ensued.

The district court held that even though all of the officers were on active duty when the park positions were advertised and each resigned from his MPD position and began the new park position on the same day, the appellants retired and were receiving full retirement benefits and were thus not similarly situated to the non-retirees. The court held that the appellants had already been compensated for the value of their MPD service with respect to vacation and accrual and salary schedule placement. Further, the court held that the appellants were not forced to retire, determining that under section 423B.12, these officers remained "active members" of the MPRA even after beginning their new jobs as Park Board officers because the Park Board is also a member of the MPRA. Finally, the court held that the Park Board had a rational basis for its interpretation of section 7.7(b).

As to the appellants' substantive due process claim, the court likewise held that the Park Board's application of section 7.7(b) of the collective bargaining agreement withstands rational basis scrutiny. It also appears that the district court disposed of the appellants' juxtaposed procedural due process claim by ruling that they have no property right in their vacation accrual and salary schedules, and thus no process was due. Because they had retired, the court refused to find that the appellants had remaining pension benefits upon which they could establish a property interest.

## II.   DISCUSSION

This court reviews the grant of summary judgment de novo, viewing the record most favorably to the non-moving party.  Tipler v. Douglas County, 482 F.3d 1023, 1025 (8th Cir. 2007).  Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Knowles v. Citicorp Mortgage, Inc., 142 F.3d 1082, 1085 (8th Cir. 1998).

### A.   Equal Protection

"In general, the Equal Protection Clause requires that state actors treat similarly situated people alike."  Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000).  "State actors may, however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the clause."  Id.  The appellants must, as a threshold matter, demonstrate that the Park Board treated them differently than similarly situated officers. Further, because the appellants are not members of a suspect class and their claims do not involve a fundamental right, their federal equal protection claim is subject to rational basis review.  Koscielski v. City of Minneapolis, 435 F.3d 898, 901 (8th Cir. 2006).  "Under this review, a court must reject an equal protection challenge to a statutory classification if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Carter v. Arkansas, 392 F.3d 965, 968 (8th Cir. 2004) (internal quotation omitted).  Indeed, even "[u]nequal application of the regulations in question . . . does not violate equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."  Cent. Airlines, Inc. v. United States, 138 F.3d 333, 335 (8th Cir. 1998) (internal quotation omitted).

The governmentally established "classification" challenged by the appellants is that of retiree, which they claim was a status forced upon them by the MPD.  They

are not challenging a statutory or legislative classification per se, although the effect of the purportedly forced retirement led to an alleged unequal application of contract and statutory provisions by the Park Board. The district court used the appellants' retired status as a means of demonstrating that the two groups were, in fact, distinct, determining that the appellants chose to retire. The Park Board maintains this approach in their briefs on appeal, claiming it is absurd for the appellants to remain steadfast to their claim that they were forced to retire. But, regardless of the district court's and Park Board's assertions that the appellants had a choice whether or not to retire and that section 423B.12 does not require them to retire, we view the evidence as set forth by the appellants at this stage in the light most favorable to them–namely that the MPD and state law gave them no alternative.

According to the appellants, "[t]his is a situation in which defendant has created, by its own action, two groups of citizens, and chosen [sic] to use the distinction that it itself created as a basis for paying one group less than the other." However, what the appellants fail to address is that they were never similarly situated in all respects with the officers to which they compare themselves: the appellants were all members of the MPRA and the other officers were all members of PERA. According to the appellants, the City of Minneapolis, acting through the MPD, determined that their retirement was required under the MPRA in order for them to best preserve their well-earned pension benefits. Appellant Ganley affied to that fact as well, stating that it was his understanding, after serving on the MPRA Board, that he was obligated under section 423B to collect his pension at the time he ceased being a MPD officer. Thus, as we see it, the appellants became "retirees" because of their participation in the MPRA and the MPD's supposed determination that they must retire, rather than through any distinction created by the Park Board. So, while the appellants argue that their participation in the MPRA pension plan with its different options and obligations than under the PERA pension arrangement makes "no difference" with respect to their claim, we hold that it makes an outcome determinative difference.

This difference also rationally explains the Park Board's treatment of these two otherwise similarly situated groups of officers. Regardless of whether the appellants characterize it as a "forced" retirement by the MPD, there was a rational basis for the Park Board's determination that the appellants were not subject to the benefit of section 7.7(b) of the collective bargaining agreement.[2] The appellants were not "sworn personnel employed by the [MPD]" at the time the Park Board reviewed their employment status and placed them on the salary and vacation schedules. And, even if the Park Board mistakenly applied the statute or contract provision, "an erroneous or mistaken performance of the statutory duty, although a violation of the statute, is not without more a denial of the equal protection of the laws." Snowden v. Hughes, 321 U.S. 1, 8 (1944). The appellants have made no showing that the Park Board's allegedly unlawful administration of the collective bargaining agreement was the result of intentional or purposeful discrimination. Koscielski, 435 F.3d at 901. The appellants' equal protection claim fails.

## B.    Due Process

"The Due Process Clause of the Fourteenth Amendment prohibits governments from depriving 'any person of life, liberty, or property, without due process of law." Creason v. City of Washington, 435 F.3d 820, 824 (8th Cir. 2006) (quoting U.S. Const. amend. XIV, § 1). The appellants' complaint did not state whether their due process cause of action was a substantive due process or a procedural due process claim, and the district court seemingly addressed only whether the appellants' sufficiently satisfied a substantive due process claim. It is clear, however, that both claims were argued in the appellants' brief submitted in opposition to the summary judgment motion as well as in this appeal. We address both.

---

[2]Our analysis also encompasses the stricter rational basis standard under the Equal Protection Clause of the Minnesota Constitution. See State v. Russell, 477 N.W.2d 886, 889 (Minn. 1991).

Under the rubric of substantive due process, the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 1986)). In analyzing a substantive due process claim, our task is two-fold. First, we consider whether the appellants possessed a right arising under the Fourteenth Amendment. Creason, 435 F.3d at 824. Second, we determine whether the Park Board's conduct deprived the appellants of that right within the meaning of the Due Process Clause. Id. To meet this burden, the appellants "'must demonstrate that the government action complained of is truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law.'" Id.[3] (quoting Klein v. McGowan, 198 F.3d 705, 710 (8th Cir. 1999)).

The appellants do not articulate which fundamental right–that is, one "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed,"–is at stake in this case. Moran v. Clarke, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (quoting Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997)). However, regardless of whether or not the appellants possessed a right arising under the Fourteenth Amendment, we dispose of the substantive due process claim under our second inquiry. The Park Board's actions were not so "arbitrary" or "conscience-shocking" as to violate due process. Id. Indeed, as noted earlier, we find the Park Board's actions rational.

It appears that the appellants' true due process claim, if any, lies in procedural due process–they did not receive information about the effects of their retirement from the MPD, nor did they receive a hearing on whether section 423B.12 required them

---

[3]The inquiries under the United States Constitution and the Minnesota Constitution for purposes of due process are identical and both are encompassed by this analysis. McCollum v. State, 640 N.W.2d 610, 617-18 (Minn. 2002).

to retire so that they could determine what was in their best interest. The resulting claimed deprivation is that they "receive less salary than other employees, while receiving their pension payments, reducing the value of those pension benefits received."

The procedural component of the Due Process Clause protects property interests created not by the Constitution but by "'rules or understandings that stem from an independent source such as state law.'" Neal v. Fields, 429 F.3d 1165, 1167 (8th Cir. 2005) (quoting Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005)). Here, regardless of whether the appellants have a protected property interest in their pension benefits, or whether their pension benefits were in any way diminished by the acts of the Park Board, we dispose of this claim on other grounds. The appellants' true deprivation, they claim, occurred at the time of their "forced" retirement. This, it seems to us, is a misdirected claim in the current action. The instant action is against the Park Board, the department that interpreted section 7.7(b) of the collective bargaining agreement. It was the MPD who allegedly created the now-challenged status of appellants as retirees. The appellants mistakenly conflate the state actors here,[4] arguing in some places that these acts were taken by the Park Board, while also acknowledging that their retiree status was "forced upon them by another department of the City." Accordingly, we hold that the proper government actor is not before us.

Turning to the defendant in the instant action, the Park Board's decision to determine the appellants' vacation accrual and placement on the salary schedule (the

---

[4]Throughout their brief, the appellants often claim the "defendant" did certain acts when, in fact, they mean the City of Minneapolis, the MPD specifically, or the Park Board–the only defendant here. Clearly however, the appellants acknowledge the important difference by setting forth that "[t]he City, through its MPD, created the status of plaintiffs as retirees, and then the City, through defendant, used that status as a basis to pay those employees less than other employees."

appellants' sole claim in this action)[5] without reference to the appellants' tenure at the MPD was reasonable given the appellants' retired status. The appellants do not articulate what process, if any, was denied them at the time the Park Board made its determination. Parrish v. Mallinger, 133 F.3d 612, 615 (8th Cir. 1998) ("A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures.") The failure to receive information about the effects of retiring from the MPD on the appellants' new position with the Park Board would be a violation of process due, if at all, at the time of retirement, not at the time at issue in this action. Accordingly, the appellants cannot meet their burden and their procedural due process claim against the Park Board fails.

## III. CONCLUSION

Because the appellants are not similarly situated to those with whom they compare themselves, the Park Board's actions were reasonable, and the Park Board did not deny the appellants any process, we affirm.

_____

_____

[5]"Plaintiffs herein have not been given credit by the defendant for service with the Police Department for purposes of vacation accrual and pay, notwithstanding the language [contained in Section 7.7(b) of the collective bargaining agreement]." J.A. at 21 (Compl. at ¶ 5).