# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1909

_____

| | | |
|---|---|---|
| Michael Dahlen; Janet Dahlen; | * | |
| Michael McNiel, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Shelter House; Iowa City Board | * | |
| of Adjustment; Iowa City, Iowa; | * | |
| Iowa City Planning and Zoning | * | |
| Commission, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: January 14, 2010
Filed: March 24, 2010

_____

Before GRUENDER and SHEPHERD, Circuit Judges, and LANGE,[1] District Judge.

_____

GRUENDER, Circuit Judge.

This case is the latest front in the protracted legal battle over a homeless shelter that appellee Shelter House plans to build on a plot of land adjacent to the Dahlens' property in Iowa City, Iowa. Michael and Janet Dahlen, along with Michael McNiel

_____

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota, sitting by designation.

("the Dahlens"), brought suit under 42 U.S.C. § 1983, claiming a violation of the Fifth Amendment's Takings Clause and requesting damages as well as an injunction to prevent the planned construction. Because we find that the controversy is not ripe, we affirm the district court's dismissal for lack of jurisdiction.

## I.  BACKGROUND

Shelter House, a non-profit organization, provides housing and other services to homeless people. In 2004, Shelter House began planning to construct a new homeless shelter on property adjacent to the Dahlens' mobile home park. The Iowa City Board of Adjustment granted Shelter House a special zoning exception to allow them to build the shelter. The Dahlens and others challenged this special exception in Iowa state court. The Iowa Supreme Court ultimately upheld the grant of the special exception in March 2008. *Bontrager Auto Serv., Inc. v. Iowa City Bd. of Adjustment*, 748 N.W.2d 483 (Iowa 2008).

A few months later, in August 2008, the Dahlens filed this § 1983 suit, alleging that the special exception, along with the building permit they anticipated Iowa City would issue to Shelter House, violated the Dahlens' constitutional right to due process. Shelter House and the other defendants filed a motion to dismiss for lack of jurisdiction under the *Rooker-Feldman* doctrine. *See Lance v. Dennis*, 546 U.S. 459, 463 (2006) ("[U]nder what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.").

While the motion to dismiss was pending, Shelter House received approval of its site plan from the Iowa City Planning and Zoning Commission. The Dahlens then successfully moved to amend their complaint, abandoning their due process challenge to the special exception and building permit and instead challenging the approval of the site plan. In their amended complaint, the Dahlens claim that their mobile home

park has continuously occupied small portions of the property on which Shelter House plans to build its homeless shelter and that they therefore own these portions through adverse possession. The Dahlens argue that Iowa City's inclusion of their property within the site plan constitutes a violation of the Takings Clause. *See* U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."). Shelter House and the other defendants again moved to dismiss, arguing that the takings claim was not ripe and that the district court therefore lacked jurisdiction.[2] The district court[3] agreed and granted the defendants' motion to dismiss. The Dahlens filed this appeal.

## II.   DISCUSSION

In reviewing a motion to dismiss, "we assume the truth of the facts as alleged in [the] complaint." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. ---, 129 S. Ct. 788, 792 (2009). In particular, we assume for the purposes of this appeal that the Dahlens have in fact acquired the portions of property included in the site plan through adverse possession.[4] Additionally, the Dahlens do not dispute that Shelter

---

[2]While the most recent motion to dismiss was pending, the Dahlens opened additional fronts in this legal battle. The Dahlens filed a petition for certiorari and declaratory judgment in Iowa state court, raising similar challenges to the site plan as those raised in this case. Iowa City issued Shelter House a building permit based on the site plan, and the Dahlens also have appealed that permit to the Iowa City Board of Adjustment, again claiming ownership of portions of the property through adverse possession.

[3]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

[4]We note that the Dahlens never filed a quiet title action to resolve the adverse possession claim. At oral argument, the appellees informed us that Shelter House has now filed such an action.

House intends to build a shelter for homeless people on the property adjacent to their mobile home park.

Our analysis begins, as it must, with the question of jurisdiction. *See Demore v. Kim*, 538 U.S. 510, 516 (2003). We review the issue of jurisdiction de novo. *See McKenzie v. City of White Hall*, 112 F.3d 313, 316 (8th Cir. 1997). The U.S. Supreme Court's decision in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), governs the jurisdictional question of ripeness with respect to takings claims, setting out two requirements: (1) there must be a "final decision" with respect to the property at issue, *id.* at 186, and (2) the aggrieved party must "seek compensation through the procedures the State has provided for doing so," *id.* at 194. We limit our analysis to the second requirement of *Williamson*, whether the Dahlens have sought compensation through the procedures Iowa provides. Failure to satisfy this requirement alone means that their claim is not ripe and that federal courts lack jurisdiction to entertain their claim. *See Snaza v. City of Saint Paul*, 548 F.3d 1178, 1181-82 (8th Cir. 2008).

The Dahlens do not claim that they have sought compensation through Iowa's inverse condemnation procedures, the method Iowa provides for obtaining compensation for an alleged taking. *See Kingsway Cathedral v. Iowa Dep't of Transp.*, 711 N.W.2d 6, 9 (Iowa 2006) (outlining Iowa's inverse condemnation procedures). Nor do they argue that Iowa's inverse condemnation procedures are inadequate for obtaining compensation for takings generally. *See Williamson*, 473 U.S. at 194-95 (holding that property owners must use adequate state compensation procedures before bringing takings claims). Instead, the Dahlens argue that they need not resort to inverse condemnation procedures because the alleged taking was a private taking—one done without a justifying public purpose. *See Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 245 (1984) ("A purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void."). Because no amount of

compensation can remedy a private taking, resort to inverse condemnation in such cases is unnecessary. *McKenzie*, 112 F.3d at 317 (holding that property owners "need not pursue state procedures for a claim that the City took [their property] without a justifying public purpose, however, because this is a Constitutional violation even if compensation is paid."). Since Iowa law does not provide adequate procedures to remedy the allegedly private taking, the Dahlens argue they have satisfied the second *Williamson* requirement.

The Dahlens' argument that resort to inverse condemnation is unnecessary with respect to this taking proceeds in several steps. First, they argue that we should determine whether the alleged taking was a private taking—that is, whether it was done "without a justifying public purpose," *McKenzie*, 112 F.3d at 317—by applying Iowa's statutory definition of "public purpose," *see* Iowa Code § 6A.22,[5] rather than

---

[5] Iowa Code § 6A.22(2)(a) reads:

"Public use", "public purpose", or "public improvement" means one or more of the following:
(1) The possession, occupation, and enjoyment of property by the general public or governmental entities.
(2) The acquisition of any interest in property necessary to the function of a public or private utility, common carrier, or airport or airport system.
(3) Private use that is incidental to the public use of the property, provided that no property shall be condemned solely for the purpose of facilitating such incidental private use.
(4) The acquisition of property pursuant to chapter 455H ["Land Recycling and Remediation Standards"].
(5) (a) The acquisition of property for redevelopment purposes and to eliminate slum or blighted conditions in that portion of an urban renewal area designated as a slum or blighted area if each parcel, or any improvements thereon, for which condemnation is sought is determined by the governing body of the municipality to be in a slum or blighted condition . . . .

using the meaning of "public purpose" developed in Fifth Amendment takings jurisprudence, *see Kelo v. City of New London*, 545 U.S. 469, 485 (2005) (describing the "traditionally broad understanding of public purpose" used in Fifth Amendment jurisprudence). Then, after dismissing as inapplicable the majority of § 6A.22(2)(a)'s definitions, the Dahlens focus on § 6A.22(2)(a)(1), which they urge us to interpret narrowly to require general public access to the property or government ownership of it. Next, they argue that under this narrow reading, Shelter House's planned homeless shelter lacks a "justifying public purpose," since the shelter will not allow general public access and will be owned by Shelter House, a non-governmental entity. Therefore, the argument goes, Iowa City's approval of the site plan was a private taking, and under *McKenzie*, the Dahlens need not resort to inverse condemnation procedures to have a ripe claim under *Williamson*.

We focus on the first step of the Dahlens' argument, analysis of which reveals the flaw in their claim.[6] The Dahlens, in essence, are attempting to bootstrap their Iowa statutory claim into a federal constitutional claim. Under their view, violations of § 6A.22, ipso facto, are also violations of the Fifth Amendment's Takings Clause, regardless of whether the taking satisfies the "traditionally broad understanding of public purpose" developed in Fifth Amendment jurisprudence, *Kelo*, 545 U.S. at 485. We ultimately reject their claim that violations of state eminent domain statutes necessarily give rise to federal constitutional claims.

The Fifth Amendment's test for whether a taking was done without a justifying public purpose does not incorporate state law definitions of the term "public purpose." This question was arguably left open in *McKenzie*, the only case where we have addressed the ripeness of a private takings claim. 112 F.3d at 317 (finding a takings claim ripe when it was allegedly "without a justifying public purpose," without

---

[6]Therefore, we need not reach the question of how to interpret § 6A.22. Nor do we need to address the question whether the proposed homeless shelter would qualify as a "public purpose" under the statute.

elaborating). The Fifth Circuit came closer to addressing the issue in *Samaad v. City of Dallas*, 940 F.2d 925, 935-36 (5th Cir. 1991), which we cited approvingly in *McKenzie*, when it held that a takings claim was unripe, despite a plaintiff's claim that Texas law only allowed compensation claims for "public works" takings as defined by state law. The U.S. Supreme Court eliminated any doubt on the issue, however, when it later stated in *Kelo*, "[t]his Court's authority . . . extends only to determining whether the City's . . . condemnations are for a 'public use' *within the meaning of the Fifth Amendment to the Federal Constitution*." *Kelo*, 545 U.S. at 489-90 (emphasis added). Although states are free to enact restrictions on their own use of eminent domain beyond those provided in the U.S. Constitution, *see Kelo*, 545 U.S. at 489, violations of these state restrictions do not necessarily violate the Fifth Amendment as well.[7]

Although the Dahlens rely on the false premise that the test for a private taking incorporates Iowa's statutory definition of "public purpose," their claim would nonetheless satisfy the second *Williamson* requirement if the alleged taking was done without a justifying "public purpose," *McKenzie*, 112 F.3d at 317, as the term is used in Fifth Amendment takings jurisprudence. Under the Fifth Amendment, courts have employed a "traditionally broad understanding of public purpose." *Kelo*, 545 U.S. at

---

[7]The Dahlens' protean argument for a contrary result appears to take the form of nascent public policy and due process claims. They first argue that requiring property owners to resort to state inverse condemnation procedures to remedy statutorily prohibited takings effectively nullifies the state statutory restrictions. Second, they assert, without explanation, that "[t]he state law statutory right of a property owner under Iowa Code § 6A.22 to be free from condemnation in cases such as this is a property right." To the extent these arguments are not waived for failure to adequately develop them, *see Cubillos v. Holder*, 565 F.3d 1054, 1058 n.7 (8th Cir. 2009), we reject them. Both arguments ignore the Dahlens' ability to obtain an injunction against an illegal taking in state court. *See In re Condemnation of Certain Rights in Land for the Constr. of a County Road by Allamakee County*, 666 N.W.2d 137, 139 (Iowa 2003).

485; *see Gamble v. Eau Claire County*, 5 F.3d 285, 287 (7th Cir. 1993) ("We can find no case in the last half century where a taking was squarely held to be for a private use."). "The 'public use' requirement is . . . coterminous with the scope of a sovereign's police powers." *Midkiff*, 467 U.S. at 240. The requirement is satisfied "where the exercise of the eminent domain power is rationally related to a conceivable public purpose." *Id.* at 241.

The Dahlens all but concede that the proposed homeless shelter satisfies the "public purpose" requirement under the broad meaning of the term in Fifth Amendment jurisprudence. Indeed, their complaint includes no allegations that the alleged taking was done without such a public purpose, and their brief is silent on the question. Their bald claim that this is an illegal taking is insufficient. *See Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) ("[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007))). In any event, the Dahlens do not dispute that the property will be used as a homeless shelter. As a result, the alleged taking is rationally related to a conceivable public purpose— providing shelter for homeless people. *Cf. Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1023 (9th Cir. 2007) ("Santa Monica's desire to . . . remedy housing shortages constitutes a legitimate public purpose."). That Shelter House, rather than Iowa City, will own and operate the facility does not prevent the finding of a public purpose. *See Kelo*, 545 U.S. at 486. Because the proposed homeless shelter meets the Fifth Amendment's public purpose requirement, the Dahlens are required to seek compensation through state inverse condemnation procedures before their claim can be ripe. Without a ripe claim to adjudicate, the district court properly dismissed this case for lack of jurisdiction.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal for lack of jurisdiction.

_____