# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3216

_____

American Family Insurance; Liberty Mutual Insurance

*Plaintiffs - Appellants*

v.

City of Minneapolis

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 15, 2016
Filed: September 6, 2016

_____

Before MURPHY and SHEPHERD, Circuit Judges, and PERRY[1], District Judge.

_____

SHEPHERD, Circuit Judge.

American Family Insurance ("American Family") and Liberty Mutual Insurance ("Liberty Mutual") brought suit against the City of Minneapolis ("the City") following

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri, sitting by designation.

a water-main break in Minneapolis, Minnesota. The district court[2] granted summary judgment in favor of the City on each asserted claim. American Family and Liberty Mutual (together, "Appellants") appeal the district court's decision on their Equal Protection Clause claim, federal takings claim, and state takings claim. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

A water main in Minneapolis broke on October 20, 2013, and flooded the basement condominiums and street-level window wells in the nearby Sexton Condominium building ("Sexton building"), which is owned by the Sexton Condominium Association, Inc. ("Sexton"). Although the City repaired the break within twelve hours, the flood caused damage to both uninsured and insured owners in the Sexton building. Two owners, Juliana Koe and Jane Grenell each owned apartments in the Sexton building and insured their apartments with Liberty Mutual. American Family insured Sexton. For damage associated with the water-main break, Liberty Mutual paid $25,900 to Koe and $20,800 to Grenell. American Family paid $1.37 million to Sexton for the damage associated with the water-main break.

Several entities and individuals submitted claims for damages associated with the water-main break to the City. The City settled thirteen claims made by natural persons who were tenants of the Sexton building and one claim made by Sexton for the portion of its damages that was not covered by its insurance. The City paid these fourteen claims without requiring evidence or admitting that the water-main break resulted from the City's negligence. Appellants, along with another insurance company not a party to the present case, submitted several claims to the City on behalf

---

[2]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

of their insureds.  The only claims denied by the City were those submitted by the insurance companies.

Appellants filed a state court action in April 2014, which the City removed to federal court in May 2014.  The Amended Complaint asserted five causes of action against the City: negligence, trespass, violation of the Equal Protection Clause, federal law takings, and state law takings.  After the parties stipulated to the dismissal of the negligence claim, the City filed a motion for summary judgment on each of the remaining claims.  The district court granted the City's motion for summary judgment on all remaining claims, dismissing with prejudice the trespass and Equal Protection claims and dismissing without prejudice the federal and state takings claims.  Specifically, the district court concluded that no evidence existed that the City displayed the requisite intent for the water main to break as would be required for a trespass claim, that the City made settlement decisions based on the nature of the loss – insured versus uninsured – and therefore did not treat similarly situated persons differently as would be required for an Equal Protection claim, and that the state takings claim was procedurally defective so the federal takings claim was not ripe for review.  American Family and Liberty Mutual now appeal the district court's grant of summary judgment on the Equal Protection and takings claims.

## II.

Appellants first claim the district court erred in granting the City's motion for summary judgment on their Equal Protection claim.  "We review the district court's grant of summary judgment de novo, viewing the record and drawing all reasonable inferences in the light most favorable to the nonmoving party." Life Investors Ins. Co. of Am. v. Corrado, 804 F.3d 908, 912 (8th Cir. 2015) (citing Shrable v. Eaton Corp., 695 F.3d 768, 770 (8th Cir. 2012)).  If no dispute of material fact exists, summary judgment is appropriate.  Id. at 770-71.

As subrogating insurance carriers, Appellants argue they assume the rights of their insureds and are therefore similarly situated to the uninsured claimants whose claims the City settled and paid. Appellants cite Medica, Inc. v. Atl. Mut. Ins. Co., 566 N.W.2d 74, 76-77 (Minn. 1997) and contend that because the insurer "stands in the shoes of the insured and acquires all of the rights the insured may have against a third party," the insurance companies have assumed their insured's right to bring a claim against responsible third parties. According to Appellants, because both the insured and uninsured property owners suffered property damage as a result of the water-main break, they are similarly situated with respect to their causes of action against the City. Upon that foundation, Appellants argue that because they "stand in the shoes" of the insured owners – Sexton, Koe, and Grenell – they are similarly situated to the uninsured tenants in the Sexton building, thus the City should have settled Appellants' claims in the same manner it settled the fourteen claims from uninsured claimants. Finally, Appellants note that both American Family and Liberty Mutual are "mutual" insurance companies, meaning casualty losses as well as subrogation recoveries are passed on to policyholders in the form of premium rate changes, so the policyholders will ultimately pay the cost of the City's denial of the insurance companies' claims.

The Equal Protection Clause requires state actors to treat similarly situated persons alike, but state actors do not run afoul of the Equal Protection Clause if they treat dissimilarly situated persons dissimilarly. Ganley v. Minneapolis Park & Recreation Bd., 491 F.3d 743, 747 (8th Cir. 2007) (internal quotations and citations omitted). Appellants must show the City treated them differently than similarly situated claimants. "[B]ecause the appellants are not members of a suspect class and their claims do not involve a fundamental right, their federal equal protection claim is subject to rational basis review." Id. (citing Koscielski v. City of Minneapolis, 435 F.3d 898, 901 (8th Cir. 2006). Under rational basis review, the classification must only be rationally related to a legitimate government interest. Gallagher v. City of Clayton, 699 F.3d 1013, 1019 (8th Cir. 2012) (internal citations omitted); Friends of

the Lake View Sch. Dist. Incorp. No. 25 v. Beebe, 578 F.3d 753, 762 (8th Cir. 2009) (internal quotations and citations omitted).

Here, the City distinguished between two classifications of claimants: (1) those made by claimants, both natural persons and business entities, where insurance did not cover the loss; and (2) claims made by insurance companies based on losses suffered by their insureds. The City paid claims to the first classification of claimants but denied claims made by the second classification of claimants.

While Appellants contend that they are similarly situated to the first classification of claimants, we recognize several significant differences between the two groups. First, the Appellants are insurance companies in the business of assuming risks of loss on behalf of their insureds. Both American Family and Liberty Mutual utilize detailed calculations and analysis to compute risks of each insured individual or entity, then charge policyholders premium rates to assume those risks. Conversely, the uninsured owners in the Sexton building are not in the business of assuming the risk of loss on behalf of them. Second, while American Family and Liberty Mutual each received premium payments, intended to cover the risk of loss, from their insureds in the Sexton building, the uninsured claimants received no premium payments from others. This difference in the nature of the losses between the two groups greatly distinguishes them. The uninsured tenants suffered personal property damage and needed temporary housing, while Sexton suffered property damage to the Sexton building, which is its primary asset and revenue source. The insurance companies, on the other hand, suffered only the loss of the payments made to their insureds, for which they had already been compensated through the premium payments from those same insureds. Finally, the losses suffered by the first classification of claimants were real and immediate losses to personal property caused by the flood. The losses suffered by Appellants were monetary sums that they were legally bound to pay pursuant to insurance contracts with their insureds. Due to these significant differences between the two classifications of claimants and the losses they

incurred, we conclude the insurance companies are not similarly situated to the uninsured property owners for purposes of an Equal Protection Clause claim. Carter v. Arkansas, 392 F.3d 965, 968-69 (8th Cir. 2004) (rejecting equal protection challenge because plaintiff public school employees failed to show they were similarly situated "in all relevant respects" to state employees who received different treatment); Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000) ("State actors may, however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the [Equal Protection Clause]."); Klinger v. Dep't of Corr., 31 F.3d 727, 733 (8th Cir. 1994) (holding that plaintiffs, who were not similarly situated to others who received different treatment than the plaintiffs, did not suffer equal protection violations).

Even if Appellants could demonstrate that they are similarly situated to the uninsured claimants, they must also show the City's differential treatment between the classes of claimants is not rationally related to a legitimate government interest. See True v. Nebraska, 612 F.3d 676, 683-84 (8th Cir. 2010). The City claims it has a legitimate interest in protecting the health, safety, and welfare of persons within its jurisdiction. Because the welfare of its citizens was threatened by the flooding of the Sexton building, the City contends that it agreed to pay the claims for the uninsured losses in order to compensate the injured persons quickly and minimize the time that the uninsured claimants were without housing and suffering uncompensated damage. On the other hand, the City argues that the losses suffered by the insurance companies – monetary damages only – were not related to the health, safety, and welfare of its citizens. Appellants argue the City settled and paid the claims of the uninsured claimants based on litigation risks and potential sympathy by a jury toward the uninsured claimants as opposed to an insurance company. Sympathy, according to Appellants, cannot serve as the rational basis for a distinction made by a state actor because it is subjective and does not serve the City's role of protecting its citizens.

We are satisfied that the reasons proffered by the City, including protecting the welfare of its citizens by minimizing the time claimants were without housing and suffering uncompensated damages, as well as minimizing its own costs and litigation risks, demonstrate that its settlement decisions were rationally related to legitimate, government interests. See Stevenson v. Blytheville Sch. Dist. #5, 800 F.3d 955, 972-73 (8th Cir. 2015) (rejecting an equal protection claim where the defendant, a school district, had "at least a rational basis" for its differential treatment of dissimilarly situated students); Kansas City Taxi Cab Drivers Ass'n, LLC v. City of Kansas City, Mo., 742 F.3d 807, 810-11 (8th Cir. 2013) (denying an equal protection claim where the plaintiffs failed to meet "the burden of negating every conceivable basis which might support the classification at issue") (internal quotations omitted); Weems v. Little Rock Police Dep't, 453 F.3d 1010, 1015 (8th Cir. 2006) (recognizing a legitimate government interest in protecting the health, safety, and welfare of its citizens). Accordingly, we conclude the district court did not err in granting summary judgment in favor of the City on Appellants' Equal Protection Clause claim.

III.

We now turn to Appellants' claims regarding both state and federal law takings. We apply the same de novo review to the district court's decision to grant summary judgment on the takings claims as we applied to the Equal Protection Clause claim. See Life Investors Ins. Co. of Am., 804 F.3d at 912 (internal citation omitted). Private property may not be taken without just compensation under either federal law or the applicable state law. U.S. Const. amend. V; Minn. Const. art. I § 13. Under both Supreme Court and Eighth Circuit precedent, a property owner's federal takings claim is not ripe until the property owner has exhausted any available state procedure for seeking just compensation and been denied. Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195 (1985) (holding that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause [of the United States

Constitution] until it has used the procedure and been denied just compensation"); Dahlen v. Shelter House, 598 F.3d 1007, 1010 (8th Cir. 2010) (holding that a federal claim is not ripe where the property owner failed to seek just compensation through any available state procedure); Snaza v. City of Saint Paul, 548 F.3d 1178, 1181-82 (8th Cir. 2008) (same).

In Minnesota, a property owner has a cause of action for inverse condemnation when the government has taken property without formally invoking its eminent-domain powers. Nolan & Nolan v. City of Eagan, 673 N.W.2d 487, 492 (Minn. Ct. App. 2003) (internal citation omitted). Under Minnesota law, a property owner must bring an action for inverse condemnation in state court through a mandamus action. Id. The parties agree that Appellants did not bring such an inverse condemnation claim through an action for mandamus in Minnesota state court. Appellants allege that pursuit of a state court mandamus action would have been futile in this case, so they should be permitted to bring takings claims in this federal action. Appellants reason that because they used the City's formal claims process to submit their claims and the City subsequently denied their claims, a mandamus action in state court would be futile. However, a Minnesota state court hearing such a mandamus action has the ability not only to determine whether a taking occurred under the state constitution, but also to determine the monetary value of the harm inflicted by the taking. City of Minneapolis v. Meldahl, 607 N.W.2d 168, 172 (Minn. Ct. App. 2000). Such a remedy can hardly be considered futile.

Appellants further contend that they can pursue a state takings claim directly under the Minnesota Constitution because private property was *damaged* by the water-main break. In support, Appellants cite only Wegner v. Milwaukee Mut. Ins. Co., 479 N.W.2d 38 (Minn. 1991) for the proposition that the Minnesota Supreme Court has permitted a takings action to proceed without requiring the property owner to file a mandamus action. We first note that Appellants fail to call to our attention, and we are independently unable to find, any later case citing Wegner for this

proposition. The <u>Wegner</u> court neither discussed the procedure by which the takings claims were asserted therein, nor addressed the issue of mandamus. We also recognize that <u>Wegner</u> specifically notes that a "significant restriction on recovery under [Article I, section 13 of the Minnesota Constitution] is the requirement that the taking or damaging must be for a public use." 479 N.W.2d at 40. Unlike the damage in <u>Wegner</u>, here the damage caused by the water-main break was clearly not for a public use. <u>See</u> <u>Wegner</u>, 479 N.W.2d at 40-41 (recognizing that police officers damaged the appellant's house during the course of apprehending a suspected felon and concluding that such a purpose was a public use). Thus, we conclude that Appellants' reliance on <u>Wegner</u> is misplaced, and a state takings claim, under these facts, may not be pursued directly under the Minnesota Constitution in federal court. Because Appellants failed to pursue the available mandamus action in state court, both the state and federal takings claims are not ripe for review by the federal district court.

IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the City.

MURPHY, Circuit Judge, concurring.

I respectfully disagree with the majority's conclusion that appellants' state takings claim was not "ripe for review" by the federal district court due to their failure to first pursue it through a mandamus action in state court. I do not see why Minnesota's mandamus requirement for inverse condemnation claims would preclude such claims from proceeding in the federal courts when there is a basis for federal jurisdiction. <u>See, e.g.</u>, <u>SK Finance SA v. La Plata Cty., Bd. of Cty. Comm'rs</u>, 126 F.3d 1272, 1276 (10th Cir. 1997) (rejecting argument that state inverse condemnation claim must be brought through Colorado's "special judicial procedure for

condemnation claims" where federal diversity jurisdiction existed); see also White v. Cty. of Newberry, S.C., 985 F.2d 168, 172 (4th Cir. 1993) (exercising supplemental jurisdiction over state takings claim brought in conjunction with federal CERCLA claim).

Other circuit courts have recognized that federal courts may exercise jurisdiction over state law inverse condemnation claims even when a related federal takings claim is unripe. See SK Finance, 126 F.3d at 1276; Vulcan Materials Co. v. City of Tehuacana, 238 F.3d 382, 385–86 (5th Cir. 2001) (diversity jurisdiction). I see no reason to adopt a different rule in this case; the Minnesota cases on which the majority relies address state court procedural requirements and have no bearing on the issue of federal jurisdiction. See Nolan & Nolan v. City of Eagan, 673 N.W.2d 487 (Minn. Ct. App. 2003); City of Minneapolis v. Meldahl, 607 N.W.2d 168 (Minn. Ct. App. 2000). Accordingly, while I agree with the majority that appellants' federal takings claim is not ripe for review, I do not agree that this conclusion extends to their related state claim.

I nonetheless concur in the judgment because appellants have not advanced any arguments showing federal jurisdiction over their inverse condemnation claim. Contrary to appellants' assertions, the district court need not have exercised supplemental jurisdiction over their state takings claim since the related federal claims were properly dismissed. See, e.g., Hervey v. Cty. of Koochiching, 527 F.3d 711, 726–27 (8th Cir. 2008) (when federal claims correctly dismissed, pendent state claims should be dismissed without prejudice). Further, while appellants' complaint alleges that the parties are diverse, they argue on appeal only that the district court should have exercised supplemental jurisdiction over their state takings claim (they did not raise diversity jurisdiction as in SK Finance and Vulcan Materials). I would therefore not reverse the district court on this basis. See, e.g., U.S. ex rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1518 n.2 (10th Cir. 1996) ("Our duty to consider unargued obstacles to subject matter jurisdiction does not affect our discretion to

decline to consider waived arguments that might have <u>supported</u> such jurisdiction.")
(emphasis in original).  I therefore concur in the court's judgment affirming the district
court's grant of summary judgment to the City.

_____