# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 09-3831/3834

_____

Cornelius Bennett, Individually, and on     *
behalf of the Class he seeks to     *
represent; Sylvester Rogers,     *
Individually, and on behalf of the Class     *
he seeks to represent,     *
    *
        Plaintiffs/Appellees/     *
        Cross-Appellants,     *
    *
Stacey Warren,     *
    *
         Plaintiff,     *     Appeals from the United States
    *     District Court for the
Rodney Washington, Individually, and     *     Eastern District of Arkansas.
on behalf of the Class he seeks to     *
represent; Clifton Lee, Sr., Individually,     *
and on behalf of the Class he seeks to     *
represent; Ozzie Green, Individually,     *
and on behalf of the Class he seeks     *
to represent; Larry McBride,     *
Individually, and on behalf of the Class     *
he seeks to represent,     *
    *
        Plaintiffs/Appellees/     *
        Cross-Appellants,     *
    *
Melvin Wright; Jerome Bogan; Johnny     *
Banks; Charles Wells; Jeff Stone; Bruce   *
Henley; Lamar Freeman; Wilson Done;    *

George Reed; Ed Rhodes; Carlos Chambers; Jerry Wilson; Leslie Chalk,

        Intervenor Plaintiffs/
        Cross-Appellants,

v.

Nucor Corporation; Nucor-Yamato Steel Company, (Limited Partnership),

        Defendants/Appellants/
        Cross-Appellees,

Nucor Steel - Arkansas,

        Defendant.
    _____

    No. 10-1332
    _____

Cornelius Bennett, Individually, and on behalf of the Class he seeks to represent; Sylvester Rogers, Individually, and on behalf of the Class he seeks to represent,

        Plaintiffs/Appellants,

Stacey Warren,

        Plaintiff,

Rodney Washington, Individually, and on behalf of the Class he seeks to represent; Clifton Lee, Sr., Individually, and on behalf of the Class

he seeks to represent; Ozzie Green,     *
Individually, and on behalf of the     *
Class he seeks to represent; Larry     *
McBride, Individually, and on behalf of   *
the Class he seeks to represent,     *
    *
    Plaintiffs/Appellants,     *
    *
Melvin Wright; Jerome Bogan; Johnny  *
Banks; Charles Wells; Bruce Henley;   *
Lamar Freeman; Wilson Done; George  *
Reed; Ed Rhodes; Carlos Chambers;   *
Jerry Wilson; Leslie Chalk,     *
    *
    Intervenor Plaintiffs/Appellants,  *
    *
Jeff Stone,     *
    *
    Intervenor Plaintiff,     *
    *
v.     *
    *
Nucor Corporation; Nucor-Yamato   *
Steel Company, (Limited Partnership),  *
    *
    Defendants/Appellees,     *
    *
Nucor Steel - Arkansas,     *
    *
    Defendant.     *

_____

Submitted: January 12, 2011
Filed: September 22, 2011

_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

_____

-3-

COLLOTON, Circuit Judge.

Six current and former African-American employees brought this action against Nucor Corporation and Nucor-Yamato Steel Company, L.P. (collectively, "Nucor"), alleging racial discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17. The district court[1] denied the plaintiffs' request for class certification, granted summary judgment in favor of Nucor on several claims, and the case proceeded to trial. A jury returned verdicts against Nucor and awarded each plaintiff $200,000 in damages. The parties appealed and cross-appealed, contesting various rulings by the district court. We affirm.

I.

Nucor is a large steel manufacturing company that maintains its headquarters in North Carolina and operates a number of production plants throughout the United States. One production plant in Blytheville, Arkansas, consists of two large steel mills that employ several hundred workers. The plaintiffs each worked at the Blytheville facility.

The Blytheville plant is divided into five departments: the melt shop, the roll mill, quality assurance, maintenance, and shipping. The production process begins at the melt shop, where scrap metal is melted down and cast into semi-finished products. These semi-finished products proceed to the roll mill, the largest department, where the metal is formed into finished steel beams. The quality assurance department conducts tests throughout the production process. The maintenance department is responsible for keeping the plant's mechanical and electrical equipment in good order, while the shipping department is charged with

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

maintaining finished steel products and loading them for shipment. The plaintiffs all worked exclusively in the roll mill department.

A number of Nucor employees commenced this action in the federal district court for the Western District of Arkansas in December 2003, alleging violations of federal antidiscrimination law at Nucor facilities in four different states. The district court severed the claims of the six plaintiffs in this case and transferred them to the Eastern District of Arkansas. These Arkansas plaintiffs – Cornelius Bennett, Sylvester Rogers, Rodney Washington, Clifton Lee, Ozzie Green, and Larry McBride – then sought certification of a class consisting of more than one hundred black individuals who were employed, applied for employment, or were discouraged from applying for employment at the Blytheville plant.

The plaintiffs asserted both disparate treatment and disparate impact theories of liability. Disparate treatment claims involve allegations of intentional discrimination, while disparate impact claims challenge "practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2672 (2009).

To establish disparate treatment liability, the plaintiffs alleged that Nucor had denied them promotions and training opportunities and tolerated a racially hostile work environment. The plaintiffs submitted evidence designed to show that they had been denied various promotions that were awarded to white employees, and that their requests for training in other areas of the plant were rebuffed. The plaintiffs also presented evidence that employees at Nucor regularly used racial epithets, that racial graffiti commonly appeared in the bathrooms, and that the Confederate flag was often displayed in the plant, including on Confederate-style "do-rags" sold in Nucor's on-site store for employees. Other evidence suggested that black employees were ridiculed by other employees on the workplace radio system, and the plaintiffs recounted a specific incident in which a rubber chicken was "lynched" near a black employee's work area.

In the alternative, the plaintiffs argued that even if they could not prove disparate treatment, Nucor was liable under a disparate impact theory of liability. The plaintiffs relied on statistical evidence designed to show racial disparities in Nucor's hiring and promotion decisions at the Blytheville plant. The plaintiffs argued that this statistical evidence was sufficient to prove that the criteria used to evaluate employees for promotion had a disparate impact on black employees.

The district court denied the plaintiffs' motion for class certification. The court reasoned that the plaintiffs' claims and the claims of rejected and discouraged applicants for employment would not turn on the same issues of law and fact. The court further concluded that the plaintiffs would not be adequate representatives of a class of current and former black employees, because the plaintiffs had not shown that their experiences at Nucor were sufficiently similar to those of black employees working in other areas of the Blytheville plant.

The district court then granted summary judgment in favor of Nucor on the plaintiffs' disparate impact claims and on several of the plaintiffs' disparate treatment claims. After other claims were voluntarily dismissed, the case proceeded to trial on the hostile work environment claims filed by all six plaintiffs, and a retaliation claim asserted by Lee. Following a trial in October 2009, a jury returned verdicts for the plaintiffs on their hostile work environment claims and awarded each plaintiff $100,000 in compensatory damages and $100,000 in punitive damages. The jury found in favor of Nucor on Lee's retaliation claim.

After the district court entered its final judgment in November 2009, thirteen individuals moved to intervene, asserting identical claims to those brought by the original six plaintiffs. The proposed intervenors asserted that they were members of the putative class identified by the plaintiffs, and they sought to intervene for the purpose of appealing the district court's denial of class certification. Because notices of appeal had been filed from the final judgment, the district court determined that it lacked jurisdiction over the motion to intervene.

Nucor appeals several of the district court's evidentiary rulings and argues that there was insufficient evidence to support the jury's award of punitive damages. In their cross-appeal, the plaintiffs challenge the district court's denial of their motion for class certification and several of the district court's summary judgment rulings.

## II.

Nucor challenges the admission at trial of several types of evidence describing discrimination against nonparties at the Blytheville plant. The challenged evidence includes a complaint filed against Nucor by the United States Equal Employment Opportunity Commission ("EEOC") in 1995, a 2002 letter from Nucor employees to the EEOC, and various employee affidavits gathered by Nucor in anticipation of litigation in 2003. Nucor also challenges the admission of the testimony of another Nucor employee named Danny Lee and certain statements made during the plaintiffs' closing argument. We review a district court's evidentiary rulings for abuse of discretion. *United States v. Espinosa*, 585 F.3d 418, 430 (8th Cir. 2009).

## A.

Nucor's first contention is that the district court erroneously adopted a *per se* rule that prior acts of discrimination against nonparties at the Blytheville plant were admissible. Nucor points to statements made by the district court that allegedly show the court's use of a *per se* rule.

In *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379 (2008), the Supreme Court addressed a challenge to a district court's exclusion of testimony by nonparties alleging discrimination by supervisors of the defendant company who played no part in the adverse employment action challenged by the plaintiff. *Id.* at 380. The Court concluded that such evidence should not be governed by a *per se* rule of admissibility or inadmissibility: "The question whether evidence of discrimination by other supervisors is relevant in an individual . . . case is fact based and depends on

many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.* at 388; *see also Quigley v. Winter*, 598 F.3d 938, 951 (8th Cir. 2010). A district court must therefore engage in a "fact-intensive, context-specific inquiry" in order to determine whether such evidence is relevant under Federal Rule of Evidence 401, and – if it is relevant – whether it should be excluded because its probative value is substantially outweighed by its prejudicial effect, in accordance with Federal Rule of Evidence 403. *Mendelsohn*, 552 U.S. at 388.

We are not convinced that the district court employed an impermissible *per se* rule. The court noted at a pre-trial conference that it would "make no blanket ruling" concerning the admissibility of the contested evidence, and would instead decide "on an incident by incident basis." The court directed the parties to approach the bench at trial before introducing any evidence of racial harassment of nonparties, so the court could rule on the evidence's admissibility on a case-by-case basis. The court stated that "the key" to its evidentiary analysis "will be . . . whether it's the same place, the same time, the same decision makers, or whether it's such that the people who are making the decisions reasonably should have known about the hostile environment."

The district court acted in accordance with these statements at trial. On one occasion, for instance, the court refused to allow the plaintiffs to question a witness about the content of a nonparty's affidavit, ruling that the matter was collateral and thus inadmissible under Federal Rule of Evidence 608(b). This approach is inconsistent with Nucor's assertion that the court adopted a *per se* rule of admissibility for all evidence relating to discrimination.

Nucor relies on a few excerpts from the voluminous trial transcript, including the district court's statement that "any evidence of discrimination that is [of] a similar kind to that complained [of] in this case is admissible under Rule 403." The context of this remark belies the contention that the district court abandoned its pretrial declaration to make no blanket ruling on admissibility. In responding to Nucor's

objection to a question concerning previous charges of discrimination against the company, the district court noted that the witness had denied any knowledge of those charges, even though Nucor had designated him to answer questions about discrimination at Nucor. Under those particular circumstances, the court stated that any evidence involving allegations of discrimination similar to those made by the plaintiffs would be admissible under Rule 403. The statement did not apply to all evidence of discrimination offered at trial. The court explained, rather, that the particular disputed evidence was "coming in because [the witness] is the one you have designated," and because it was similar in kind to the allegations made by the plaintiffs.

Nucor also relies on the district court's statements, when ruling on the admissibility of a 1995 lawsuit against Nucor by the EEOC, that the lawsuit was "relevant to a racially hostile environment," and that "any evidence of race discrimination at Nucor is relevant to the hostile environment claim." Although the determination of relevance is "generally not amenable to broad *per se* rules," *Mendelsohn*, 552 U.S. at 387, this court has held that evidence of harassment or discrimination against nonparty co-workers can be relevant to a plaintiff's hostile environment claim. *See, e.g.*, *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 802 (8th Cir. 2009); *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 794 (8th Cir. 2004). Read in the context, the statement cited by Nucor shows only that the district court believed that evidence of a previous enforcement action alleging race discrimination at the Blytheville plant was relevant to the credibility of the plaintiffs' allegations. This conclusion is permissible under our case law, *see Williams*, 378 F.3d at 794, and the district court therefore did not abuse its discretion.

B.

Nucor also asserts that certain nonparty affidavits used in the questioning of witnesses were inadmissible hearsay, and that the admission of various forms of nonparty evidence constituted an abuse of discretion under Rule 403. "In deference

to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings." *Mendelsohn*, 552 U.S. at 384. Rule 403, in particular, "requires an on-the-spot balancing of probative value and prejudice." *Id.* (internal quotation omitted).

1.

Keith Prevost was the controller for Nucor at the time of trial. Nucor designated him to answer and sign interrogatories in this case, including interrogatories about Nucor's knowledge of racial discrimination. Prevost acknowledged that he had been designated by the company as an official "spokesman" on the issue of racial harassment policies. Nucor asserts that the district court abused its discretion by allowing the plaintiffs to ask Prevost about a 2002 letter from Nucor employees to the EEOC and a 1995 complaint filed against Nucor by the EEOC.

We think the district court properly allowed the plaintiffs to question Prevost on these matters. In a hostile environment case, evidence of prior acts of discrimination against nonparties can be probative of the type of workplace environment to which the plaintiffs were subjected, and of the employer's knowledge and motives. *Sandoval*, 578 F.3d at 802; *Williams*, 378 F.3d at 794. The district court did not abuse its discretion by concluding that "anytime we have a racially hostile environment claim and there is a background of the EEOC being involved, that . . . is relevant to whether . . . there is continued race discrimination or a racially hostile environment."

After Prevost testified that he had no knowledge of the 2002 letter or the 1995 complaint, the district court allowed the plaintiffs to ask Prevost to read portions of each document alleging that racial discrimination had occurred at Nucor. Nucor argues that these statements were inadmissible hearsay. Hearsay is "a statement, other

-10-

than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

We again see no abuse of discretion, because the statements at issue were used to show the nature of the 2002 letter and the 1995 complaint, not to prove the truth of the matters asserted therein. The district court allowed the plaintiffs to question Prevost about the contents of these documents only after he disavowed knowledge of their existence. The court noted that the apparent ignorance of Nucor's designated "spokesman" was relevant to the company's knowledge and motives. The court also stated that this apparent lack of knowledge was "relevant to the way the company treats racial matters." Evidence of managerial knowledge and motives can be important in hostile work environment cases, particularly when punitive damages are at issue. *See Williams*, 378 F.3d at 794. The district court thus reasonably permitted the plaintiffs to demonstrate the nature of the charges of which Nucor's "spokesman" was unaware.

2.

Mike Dugan was the roll mill manager at Nucor, and was responsible for investigations of racial harassment in that department. Joe Stratman was the general manager of the Blytheville plant. Nucor designated them to testify on its behalf about racial discrimination, pursuant to Federal Rule of Civil Procedure 30(b)(6). After Dugan denied having seen any written reports of racial harassment in his department, the plaintiffs attempted to question him about the contents of several affidavits that Nucor obtained from black employees in anticipation of litigation in 2003. These affidavits contained allegations of racial harassment in the roll mill.

The district court initially refused to allow the plaintiffs to mention the contents of the affidavits. On cross-examination, however, Nucor asked Dugan to testify about disciplinary allegations made against one of the plaintiffs, even though Dugan had not been present during the incident at issue. The court permitted Nucor's questions over

the plaintiffs' hearsay objection, ruling that they were relevant to show Nucor's knowledge of and reaction to the disciplinary allegation. Noting that "what's good for the goose is good for the gander," the court then informed the plaintiffs that they would be allowed to ask about the contents of the 2003 affidavits on redirect examination. The court also permitted the plaintiffs to ask Stratman about the contents of the affidavits, after he testified that he did not refer the affidavits to department managers because they lacked enough detail to merit an investigation.

Before each witness was questioned about the contents of the affidavits, the district court instructed the jury that the affidavits were to be considered only as evidence of Nucor's knowledge, not for the truth of the matters asserted. Nucor argues, however, that the statements in the affidavits were hearsay and that they should have been excluded as irrelevant and unduly prejudicial.

The affidavits were not hearsay because they were not offered for the truth of the matters asserted. Rather, the fact of the allegations was relevant to Nucor's defense that it exercised reasonable care to prevent and correct promptly any harassing behavior. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). The evidence was admitted to show that Nucor had notice of several serious complaints of racial harassment that it failed to investigate or redress. The affidavits were thus probative of the company's preventive efforts, and Nucor relied on similar evidence in its cross-examination of Dugan. The court's limiting instructions minimized the danger of unfair prejudice. *See United States v. Betterton*, 417 F.3d 826, 832 (8th Cir. 2005). The district court did not abuse its discretion.

3.

Danny Lee worked in the maintenance department at the Blytheville plant. Lee testified about racial harassment he experienced at Nucor. He cited the presence of Confederate flags at the plant beginning in the late 1980s, and described his discovery

-12-

of several pictures of monkeys in his work area beginning around 2005. Nucor argues that his testimony was irrelevant and that the district court abused its discretion under Rule 403 by admitting the testimony.

Evidence of harassment of nonparties can be probative in a hostile work environment case, because it can bolster the plaintiffs' credibility and assist the jury in evaluating the company's motives as it determines the appropriateness of punitive damages. *Sandoval*, 578 F.3d at 802; *Williams*, 378 F.3d at 794. Whether this probative value is substantially outweighed by unfair prejudice is a fact-intensive question that must be answered by the district court in the course of trial. We conclude that the district court did not abuse its discretion under Rule 403 by admitting Lee's testimony.

4.

Nucor objects to certain statements made by plaintiffs' counsel during closing arguments. The company argues that the district court should not have allowed the plaintiffs to mention Danny Lee's testimony or the affidavits that included allegations of racial harassment against nonparties. The evidence was admissible, however, and the court may grant counsel wide latitude in arguing inferences from the evidence presented. *Ratliff v. Schiber Truck Co.*, 150 F.3d 949, 957 (8th Cir. 1998). The district court cautioned the jury again during closing arguments that the affidavits should be considered only with respect to the issue of Nucor's knowledge and not to prove the truth of the matters asserted. Given the broad discretion afforded the district court in regulating arguments of counsel, see *Cook v. City of Bella Villa*, 582 F.3d 840, 856 (8th Cir. 2009), we discern no reversible error. *See Williams v. Fermenta Animal Health Co.*, 984 F.2d 261, 266 (8th Cir. 1993) ("[T]o constitute reversible error, statements made in closing arguments must be plainly unwarranted and clearly injurious.") (alteration in original) (internal quotation omitted).

III.

Nucor's second argument is that there was insufficient evidence to support the jury's award of punitive damages. Nucor moved for judgment as a matter of law on the plaintiffs' request for punitive damages at the close of the plaintiffs' case, pursuant to Federal Rule of Civil Procedure 50(a), and renewed this motion at the close of all the evidence. Nucor acknowledges, however, that it did not file a renewed motion for judgment as a matter of law after the entry of judgment in the district court pursuant to Federal Rule of Civil Procedure 50(b). Because Nucor failed to renew its motion under Rule 50(b), we are without power to disturb the district court's entry of judgment on the jury's punitive damages award. *See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 400-01, 404 (2006); *Moore v. Am. Family Mut. Ins. Co.*, 576 F.3d 781, 789-90 (8th Cir. 2009); *EEOC v. Sw. Bell Tel., L.P.*, 550 F.3d 704, 710 (8th Cir. 2008).

IV.

The plaintiffs' first contention in their cross-appeal is that the district court erred in denying their motion for certification of a class of all black individuals who were employed at the Blytheville plant at any time since December 8, 1999. The plaintiffs sought class certification with respect to both their disparate treatment and their disparate impact claims. The district court denied the motion after concluding that the plaintiffs did not satisfy the requirements of Federal Rule of Civil Procedure 23(a). The court found that Nucor had "presented overwhelming evidence" of "[d]ecentralized decision making," and that "the diversity of employment practices, job classifications, and functions among the production departments [at Nucor], standing alone, precludes a finding that the commonality and typicality requirements are met in this case." We review the district court's decision on certification for abuse of discretion. *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010).

A district court may grant a motion to certify a class action only if the parties seeking certification affirmatively demonstrate compliance with the four prerequisites of Rule 23(a): (1) that the class be so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). We focus here on the commonality requirement, which "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 131 S. Ct. at 2551 (internal quotation omitted).

A proponent of class certification cannot show commonality by demonstrating merely that the class members have all suffered a violation of the same provision of law. *Id.* Rather, "[t]heir claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor." *Id.* This common contention must also be "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* In other words, a proponent of certification must satisfy the commonality requirement by showing that a classwide proceeding will "generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation omitted). In a Title VII disparate treatment case, for instance, the parties seeking certification must show that "examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Id.* at 2552.

A district court considering a motion for class certification must undertake "a rigorous analysis" to ensure that the requirements of Rule 23(a) are met. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim," *Dukes*, 131 S. Ct. at 2551, and the district court may "resolve disputes going to the factual setting of the case" if necessary to the class certification analysis. *Blades v. Monsanto*

*Co.*, 400 F.3d 562, 567 (8th Cir. 2005).  The court's factual findings with respect to the class certification question are reviewed for clear error.  *Hervey v. City of Little Rock*, 787 F.2d 1223, 1228 (8th Cir. 1986).

The parties created an extensive record on class certification that included more than a thousand pages of expert reports, business records, sworn declarations, deposition transcripts, answers to interrogatories, and other evidentiary exhibits and materials.  We cannot say that the district court, faced with this sizable and sometimes-contradictory record, clearly erred in finding that employment practices varied substantially across the plant's various production departments.  Department managers attested to Nucor's decentralized management structure and the autonomous nature of the various departments.  Nucor also presented detailed evidence showing that this operational independence has resulted in a wide variety of promotion, discipline, and training policies that vary substantially among departments.  For example, the roll mill often requires candidates for promotion to have a specific skill set that can be obtained only through a significant amount of experience within that department, while the shipping department uses a unique scoring system for promotions, emphasizes candidates' ability to perform versatile tasks, and keeps most employees at the same pay grade in order to encourage teamwork.  The maintenance department, by contrast, has a strict regime of training and testing requirements that varies across thirteen separate job categories, several of which are subdivided into different levels of required technical proficiency.  There are similarly stark inter-departmental variations in job titles, functions performed, and equipment used.

The plaintiffs argue that certification was appropriate given Nucor's "subjective promotion practices," relying on the Supreme Court's statement in *Falcon* that "[s]ignificant proof that an employer operated under a general policy of discrimination conceivably could justify a class . . . if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes." *Falcon*, 457 U.S. at 159 n.15.  But Nucor's promotion practices were not "entirely subjective."  Nucor applied several objective

-16-

criteria, including experience, training, disciplinary history, and test scores. These practices differed throughout the plant, with some departments emphasizing test scores, others placing great weight on specialized training, and still others using unique scoring systems to evaluate candidates for promotion.

The plaintiffs attempt to circumvent this problem by pointing to language in *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988), that "[h]owever one might distinguish 'subjective' from 'objective' criteria, it is apparent that selection systems that combine both types would generally have to be considered subjective in nature." *Id.* at 989. This approach conflates different lines of case law: the quoted statement in *Watson* concerned the categorization of employment practices for purposes of establishing a *prima facie* case of disparate impact, not class certification. *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 571-72 (6th Cir. 2004). To fit within *Falcon*'s provision for "*entirely* subjective decisionmaking processes," 457 U.S. at 159 n.15 (emphasis added), the plaintiffs must do more than show that an employer used some degree of subjective evaluation. They must demonstrate that the employer had a policy of allowing discretion by lower-level supervisors over employment matters – that is, "a policy *against having* uniform employment practices" – and that all supervisors "exercise[d] their discretion in a common way." *Dukes*, 131 S. Ct. at 2554-55.

The plaintiffs' statistical and anecdotal evidence falls short of satisfying this burden. The plaintiffs point to the statistical evidence presented by their expert, Dr. Edwin L. Bradley Jr., but this evidence has little value in the commonality analysis, because Dr. Bradley assumed for purposes of his assessment that all department managers follow a single common hiring and promotion policy. As a result, Dr. Bradley conducted a plant-wide statistical analysis that did not differentiate between the hiring and promotion decisions made in each department. Where there is strong evidence that employment practices varied significantly from department to department, such a bottom-line analysis is insufficient to demonstrate that any disparate treatment or disparate impact present in one department was also common to all the others. *See id.* at 2555 ("A regional pay disparity, for example, may be

attributed to only a small set of Wal-Mart stores, and cannot by itself establish the uniform, store-by-store disparity upon which the plaintiffs' theory of commonality depends.").

The plaintiffs also assert that class certification was appropriate on their hostile environment disparate treatment claims. They refer to evidence that Nucor sold Confederate-flag-style "do-rags" in the company store, that racial comments were broadcast via radio and e-mail, that there was racial graffiti on Nucor's equipment and bathroom walls, and that Confederate flags and nooses were displayed "where all could see them." But the cited evidence consists primarily of the plaintiffs' own declarations. They worked exclusively in the roll mill department, so their observations do little to advance a claim of commonality across the entire plant. *See Dukes*, 131 S. Ct. at 2556 (concluding that affidavits alleging discriminatory acts were of little value in the commonality analysis regarding a nationwide class, in part because the majority of the affidavits were concentrated in only six States, while half of all States had only one or two anecdotes and fourteen States had no anecdotes at all).

Nucor also presented substantial evidence contradicting the plaintiffs' assertion that any hostile environment experienced by the plaintiffs in the roll mill was experienced by black employees throughout the Blytheville plant. This evidence included statements indicating that each department maintained separate break areas and restroom facilities, as well as testimony that the departments functioned autonomously and required little day-to-day interaction. Nucor submitted evidence showing that operations at the Blytheville plant were physically segregated, with departments often housed in different buildings or separated from other departments by physical features within the same large building. Even employees within the same department could be assigned to either of the Blytheville plant's two large steel mills, which were located in separate facilities. And although the plaintiffs assert on appeal that they introduced evidence of racial comments on "the plantwide radio and e-mail system," their submission was more equivocal. One of the sworn declarations stated

that racial comments had been made "on the Nucor radio in the Roll Mill," without reference to the other departments. The plaintiffs' contention about plant-wide e-mails appears to rely exclusively on plaintiff Washington's claim that he had once viewed a single offensive e-mail that a co-worker had "circulated . . . around the entire plant."[2]

In sum, the district court was confronted with contradictory evidence in a voluminous class certification record. The court did not clearly err in finding that Nucor's departments varied widely in their employment practices, working environments, and functions. [App. I, at 124-26]. In light of these findings, the district court did not abuse its discretion by concluding that the plaintiffs had not met their burden of demonstrating the commonality of their claims.

V.

The plaintiffs assert that the district court erred in granting summary judgment on their individual disparate impact claims, failure-to-train disparate treatment claims, and failure-to-promote disparate treatment claims. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *Paine v. Jefferson Nat'l Life Ins. Co.*, 594 F.3d 989, 991-92 (8th Cir. 2010).

---

[2]The plaintiffs ask us to follow *Brown v. Nucor Corp.*, 576 F.3d 149 (4th Cir. 2009), in which the Fourth Circuit held that class certification was appropriate, because the plaintiffs introduced direct evidence of discrimination throughout a Nucor facility in South Carolina. *See id.* at 153, 156-58. *Brown* was decided without the benefit of the Supreme Court's recent opinion in *Dukes*, and, in any case, involved "scant, if any, evidence" that the various departments at the South Carolina plant were autonomous and separate. *Id.* at 158.

A.

The plaintiffs each pleaded claims of disparate impact under both Title VII and 42 U.S.C. § 1981. Summary judgment was proper on the disparate impact claims brought under § 1981, because that statute "can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982). A showing of disparate impact through a neutral practice is insufficient to prove a violation of § 1981. *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999); *Mozee v. Am. Commercial Marine Serv. Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991).

As for Title VII, an unlawful disparate impact is established under that statute "only if," as relevant here, "a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race . . . and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i). To establish a *prima facie* case of disparate impact under this provision, the plaintiffs must show: "(1) an identifiable, facially-neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two." *Mems v. City of St. Paul*, 224 F.3d 735, 740 (8th Cir. 2000). Because the plaintiffs rely on statistical evidence to show causation, that evidence "must be of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Id.* (internal quotation omitted).

We agree with the district court that the plaintiffs' statistical evidence was inadequate to create a genuine issue of material fact. First, the plaintiffs' expert, Dr. Bradley, failed to identify any specific employment practices responsible for the alleged disparate impact in promotion decisions. He concluded instead that Nucor's promotion procedure was "not capable of separation for analysis of individual components of the process." The plaintiffs relied on 42 U.S.C. § 2000e-2(k)(1)(B)(i),

-20-

which provides that a Title VII disparate impact plaintiff "shall demonstrate that each particular challenged employment practice causes a disparate impact, except that if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice." But this is not a case where the components of the employer's selection process were incapable of separation. As discussed, Nucor's five departments used a variety of measures to evaluate candidates for promotion, including objective criteria like experience, training, disciplinary history, and test scores, and subjective criteria such as interview performance and the opinion of the candidate's current supervisor. *See Watson*, 487 U.S. at 994 (plurality opinion) ("Especially in cases where an employer combines subjective criteria with the use of more rigid standardized rules or tests, the plaintiff is in our view responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities."). While Dr. Bradley discussed discipline, training, and work area experience in his rebuttal report, he did so only to show that these factors were "racially tainted" and should not be considered in his plant-wide bottom-line analysis. He did not demonstrate that each factor caused a racial disparity in promotion decisions.

Second, the plaintiffs' statistical evidence assumed that all applicants were qualified for promotion to each available position. We have observed that "'[s]tatistics based on an applicant pool containing individuals lacking minimal qualifications for the job would be of little probative value.'" *Morgan v. United Parcel Serv. of Am., Inc.*, 380 F.3d 459, 464 (8th Cir. 2004) (quoting *Watson*, 487 U.S. at 997 (plurality opinion)). This case demonstrates the problem. The plaintiffs, for example, identified a disparate impact in supervisor hiring based on a comparison between the racial composition of Nucor supervisors, as a group, and the racial composition of all employees categorized as craft workers or operatives. As a result, all employees in those categories, including those holding lower-level jobs like "shipper/loader" and "grade three crane operator," were assumed to be eligible for promotion to supervisor, even though supervisors during the relevant time period were

promoted only from pay grades six through nine. Because the plaintiffs failed to show that their statistical "applicant pools" contained only individuals who were at least minimally qualified for the promotions in question, their statistical evidence of a bottom-line disparity in promotions has little force.

The plaintiffs argue that even if their statistical evidence is inadequate to create a submissible case of disparate impact, summary judgment was improper because they introduced anecdotal evidence of racial disparities in the membership of various work crews at Nucor. But a bare assertion of racial imbalances in the workforce is not enough to establish a Title VII disparate impact claim. The plaintiffs must show that the employer "uses a *particular* employment practice that *causes* a disparate impact." 42 U.S.C. § 2000e-2(k)(1)(A)(i) (emphasis added); *see Lewis v. City of Chi.*, 130 S. Ct. 2191, 2197 (2010). The plaintiffs failed to make a submissible case, and summary judgment was warranted.

## B.

All of the plaintiffs except Bennett asserted disparate treatment claims based on Nucor's alleged failure to provide them with training that was available to similarly situated white employees. "The elements of claims alleging disparate treatment on the basis of race under Title VII and intentional employment discrimination on the basis of race under § 1981 are identical." *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1063 (8th Cir. 1997); *see* 42 U.S.C. § 2000e-2(a). The district court applied the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), but given that the record was fully developed on the motion for summary judgment, we need consider only whether there is a genuine issue for trial on the ultimate question of discrimination *vel non*. *Riser v. Target Corp.*, 458 F.3d 817, 820-21 (8th Cir. 2006); *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir. 2005).

To create an inference of racial discrimination based on disparate treatment of fellow employees, the plaintiffs must show that they were treated differently than

similarly situated persons who are not members of the protected class. *Johnson*, 424 F.3d at 810. We agree with the district court that summary judgment was appropriate because the plaintiffs' evidence was insufficient to generate a jury question on that issue. "The test to determine whether individuals are similarly situated is rigorous and requires that the other employees be similarly situated in all relevant respects before the plaintiff can introduce evidence comparing herself to the other employees." *Chism v. Curtner*, 619 F.3d 979, 984 (8th Cir. 2010) (internal quotation omitted). In a case involving allegations of discriminatory disciplinary practices, for example, this court explained that "[t]o be similarly situated, the comparable employees must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Tolen v. Ashcroft*, 377 F.3d 879, 882 (8th Cir. 2004) (internal quotation omitted).

Nucor presented evidence of a policy that "cross-training may be delayed depending on several different factors," including the number of employees already training at the desired position, the employee's need to complete mandatory safety training before training at hazardous positions, and the demands of the employee's current position. The plaintiffs did not dispute the company's policy, but argued that the cited factors did not provide a legitimate explanation for the failure to train the plaintiffs when certain white employees received training during the same period. (R. Doc. 181, at 7-8). To establish their case, however, the plaintiffs were required to do more than make general allegations that white employees received training during a six-year period when the plaintiffs also sought training. *See Pafford v. Herman*, 148 F.3d 658, 668 (7th Cir. 1998) ("[T]he mere fact that Caucasian employees may have received more training than Pafford falls short of raising an inference of discrimination. Pafford must come forward with specific evidence showing that she was similarly situated to Caucasian employees who received more training."). The plaintiffs did not establish that any white employees who received training sought by the plaintiffs for the same positions during the same time period were similarly situated with respect to the race-neutral factors relevant to Nucor's training approval process. *See Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 146 (6th Cir. 2007).

-23-

The plaintiffs also did not show that the same supervisors were responsible for granting training to white employees while denying the plaintiffs' requests. *See Fields*, 520 F.3d at 864 ("[W]hen different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects.") (internal quotation omitted). We thus agree with the district court that there was not a submissible case of discrimination for failure to train.

C.

Rogers, Washington, Green, and McBride challenge the district court's grant of summary judgment on their disparate treatment claims alleging that Nucor failed to promote them because of their race. The district court applied the *McDonnell Douglas* framework, under which each of them was required to establish a *prima facie* case by showing that: (1) he is a member of a protected group; (2) he applied for promotion to a position for which the employer was seeking applicants and for which he was qualified; (3) he was not promoted; and (4) similarly situated employees who did not belong to the protected group were promoted instead. *Austin v. Minn. Mining & Mfg. Co.*, 193 F.3d 992, 995 (8th Cir. 1999). The district court found that all four plaintiffs had failed to show that they possessed the minimum qualifications necessary for promotion to each position they sought, except for a lubricator position for which plaintiff Washington applied in July 2002. In that instance, the district court concluded that Washington had established a *prima facie* case, that Nucor had offered a legitimate nondiscriminatory reason for the failure to promote, and that Washington had failed to create a genuine issue of material fact as to whether Nucor's proffered reason was a pretext for racial discrimination.

To satisfy the second element of a *prima facie* failure-to-promote case, a plaintiff must show that he is at least "minimally qualified" for the promotion at issue. *Turner v. Honeywell Fed. Mfg. & Techs., LLC*, 336 F.3d 716, 720-21 (8th Cir. 2003). Conclusory assertions that the plaintiff was qualified are insufficient. *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1110 (8th Cir. 1998).

The plaintiffs argue that they introduced sufficient evidence to show that they were minimally qualified for each of the promotions at issue. They rely on affidavits that they each submitted describing the various promotions for which they applied. For each position, each plaintiff listed a series of objective qualifications, followed by assertions that the plaintiff possessed the required qualifications because they were similar to the qualifications required for the position already held by the plaintiff. But the assertions are not backed by solid evidence. The qualifications listed for the position sought and the position already held are not always identical. The affidavits do not state that the listed qualifications for promotion are comprehensive, and the plaintiffs did not provide the district court with copies of all the relevant job postings. Most important, the affidavits are devoid of specific factual evidence showing that the skills required to perform the plaintiffs' existing positions were similar to the skills required for the positions they sought. The plaintiffs' conclusory assertions that they possessed the qualifications necessary for promotion were insufficient to survive summary judgment. *See Rose-Maston*, 133 F.3d at 1109 ("Conclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment.").

In a separate point, Washington contends that summary judgment was improper on his claim concerning an application for a lubricator position in the maintenance department in July 2002. Nucor presented evidence that it did not promote Washington to the position because he said in his interview that his goal was to own his own business in five years and leave Nucor. The manager who decided not to hire Washington stated that Washington's goals did not align with the department's goals, because the company invests substantial time and money in training an individual to move to the department. The manager also noted that Washington had failed to make an effort to become familiar with the job through cross-training.

The plaintiffs do not identify evidence that specifically contradicts Nucor's legitimate, nondiscriminatory explanation for the failure to promote Washington, but argue instead that summary judgment was improper because of the "overall evidence

of pretext." An employer's "general policy and practice with respect to minority employment" can be relevant. *McDonnell Douglas*, 411 U.S. at 804-05. But we do not think the plaintiffs' general evidence of a hostile working environment in the roll mill is sufficient to defeat a motion for summary judgment involving a promotion in the maintenance department, particularly given the absence of specific evidence to rebut Nucor's legitimate proffered reason for its decision not to promote Washington.[3]

## VI.

The plaintiffs make a conclusory challenge to the district court's denial of the post-judgment motion to intervene. The claim is essentially abandoned, and the plaintiffs have not established error. *See, e.g.*, *Koehler v. Brody*, 483 F.3d 590, 599 (8th Cir. 2007).

\* \* \*

The judgment of the district court is affirmed.

_____

---

[3]The plaintiffs also contend that they should not be required to demonstrate that they were minimally qualified for the promotions at issue because the qualifications were themselves racially discriminatory. This argument was not raised in opposition to summary judgment in the district court, and we therefore decline to consider it. *Cole v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 533 F.3d 932, 936 (8th Cir. 2008).