# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2264

_____

Edward Charles McDonald,      *
     *
        Appellant,      *
     *   Appeal from the United States
     v.      *   District Court for the
     *   District of Minnesota.
City of Saint Paul and      *
Mayor Christopher B. Coleman,      *
     *
        Appellees.      *

_____

Submitted: February 15, 2012
Filed: May 10, 2012

_____

Before RILEY, Chief Judge, WOLLMAN, and SMITH, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Edward C. McDonald appeals the district court's[1] order granting summary judgment to defendants—the City of St. Paul (the City) and Mayor Christopher Coleman (the mayor)—on various claims arising from McDonald's unsuccessful application for appointment as director of the City's Department of Human Rights and Equal Economic Opportunity, as well as denial of his motion to compel various depositions. We affirm.

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

In 2002 and 2003, McDonald worked for the City as its director of the Office of Affirmative Action and the Coordinator of Minority Business Development and Retention. In 2003, after the termination of his employment, McDonald brought a lawsuit against the City and city officials, alleging violations of the Minnesota Whistleblower Protection Act, the Civil Rights Act of 1866, and the Civil Rights Act of 1871. In 2004, the parties to that action executed a settlement agreement and release of all claims, in which they agreed that the agreement and release did not constitute an admission of liability by any of the parties.

In August of 2008, the city council adopted an ordinance creating the Department of Human Rights and Equal Economic Opportunity (the Department). The city council then passed a resolution that "the City should engage in a community process in order to select a director for the newly formed Department of Human Rights and Equal Economic Opportunity." City Resolution of Aug. 8, 2008. Councilmember Melvin Carter III was appointed to chair the thirteen-member committee—consisting of community members and stakeholders—to "recommend to the Mayor a list of finalists." McDonald's App'x 261.

Shortly thereafter, information about the creation of the Department and the director-selection process appeared on the City's website. It indicated that the mayor and city council had appointed a selection committee; that "[t]he 12-member committee is charged with hosting a series of community meetings to engage the public and advising Human Resources on the recruitment, screening and selection of the best possible candidate"; that "[n]ew and amended ordinances will be proposed in the fall to support the departmental framework"; that the City hoped to appoint a director for the Department by January of 2009; and that "[t]he new director will

serve 3-year terms at the recommendation of the mayor and will be vetted through a community selection process similar to that for the City's police and fire chiefs."[2]

In September of 2008, McDonald applied for the position of director of the Department. The selection committee received thirty-one applicants for the position. The selection committee interviewed eight applicants, including McDonald. Selection committee member Susan Kimberly, against whom McDonald had filed a workplace conduct complaint during his tenure with the City, recused herself from McDonald's November 14, 2008, interview before the committee. Kimberly did participate in the remainder of the selection committee's activities. During McDonald's interview, another committee member asked McDonald about his 2003 whistleblower action.

After the screening interviews, the selection committee certified three finalists to the mayor: McDonald, Hope Jensen, and Lynn Littlejohn. Each of the three finalists appeared at a community interview forum on December 9, 2008, at which

---

[2]Chapter 12 of the Saint Paul City Charter sets forth the procedures used to select the City's police and fire chiefs when a vacancy arises. First, the city council establishes and appoints an examining and qualifications committee. Saint Paul, Minn., City Charter § 12.12.1 (amended 2009). The committee then provides competitive examinations to test the relative fitness of the police chief and fire chief candidates, grades the candidates, and certifies the five best-qualified candidates to the mayor. Saint Paul, Minn., City Charter § 12.12.2 (amended 2009). Once five candidates are certified to the mayor, the mayor is required to appoint one of the certified candidates, subject to the approval of the city council. Saint Paul, Minn., City Charter § 12.12.3 (amended 2009). "If the council does not approve the appointment, the mayor shall in turn appoint each of the remaining candidates, each subject to council approval." Saint Paul, Minn., City Charter § 12.12.3 (amended 2009). "If the council approves none of the candidates, the candidate who has received the highest grading by the committee shall be appointed without further action by the mayor or council." Saint Paul, Minn., City Charter § 12.12.3 (amended 2009).

councilmember Carter stated that one of the three would become the director of the Department. On December 11, 2008, Mayor Coleman and Deputy Mayor Ann Mulholland also interviewed each of the three finalists. Mayor Coleman offered the position to Jensen, who declined to accept it. The mayor then offered the position to Littlejohn, who also declined, leaving McDonald as the sole remaining finalist. Councilmember Carter, in an interrogatory response, explained his decision to reconvene the selection committee:

> [S]ometime after December 31, 2008, and before January 5, 2009, Councilmember Carter believes he and the Mayor spoke, perhaps through a staffer, about the dilemma of suddenly having only one viable finalist. Since the Selection Committee's charge was to produce a slate of 3-5 candidates for the Mayor to choose from, Councilmember Carter determined the committee's work was yet incomplete and informed the Mayor's Office that, barring their objection, Councilmember Carter intended to reconvene the committee to complete its work. Councilmember Carter then reconvened the Selection Committee.

McDonald's App'x 272. The selection committee identified Paula Forbes, Luz Frias, and Sharon Garth as additional finalists. Forbes then withdrew from consideration, leaving Frias and Garth as the two additional finalists certified to the mayor. Prior to an interview with the mayor, Garth withdrew. Mayor Coleman and Deputy Mayor Mulholland interviewed Frias and ultimately offered her the director position. Frias accepted and became the director.

McDonald brought the current action against the City and the mayor in April 2009, alleging (1) violations of his rights to equal protection and procedural and substantive due process under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, resulting from his engagement in protected activity; (2) conspiracy to deny him an employment opportunity with a public institution because of engagement in protected activity, in violation of 42 U.S.C. § 1985; (3) violations of Title VII (42 U.S.C. §§ 2000(e) *et seq*. and 2000e-3(a)) of the Civil

-4-

Rights Act of 1964; (4) violation of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*); (5) violation of the Minnesota Human Rights Act (MHRA) (Minn. Stat. §§ 363A.14(1) and 363A.15(a)); (6) violation of his rights to equal protection and substantive due process under Article I, Section 2 of the Minnesota Constitution; and (7) intentional infliction of emotional distress under Minnesota law. The district court granted defendants' motion for summary judgment on all claims.

## II.

"We review the district court's grant of summary judgment de novo, applying the same standards as the district court and viewing the evidence in the light most favorable to the nonmoving party." Zike v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 646 F.3d 504, 509 (8th Cir. 2011) (quoting Travelers Prop. Cas. Co. of Am. v. Gen. Cas. Ins. Co., 465 F.3d 900, 903 (8th Cir. 2006)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

A. Due Process

McDonald contends that the mayor and the City violated his right to due process under the United States Constitution and the Minnesota Constitution[3] by

---

[3]"The due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the Constitution of the United States." Sartori v. Harnischfeger Corp., 432 N.W.2d 448, 453 (Minn. 1988) (citing Anderson v. City of St. Paul, 32 N.W.2d 538, 541 (Minn. 1948)); see also Minneapolis Taxi Owners Coalition, Inc. v. City of Minneapolis, 572 F.3d 502, 510 (8th Cir. 2009) (same).

failing to appoint him to the director position after Jensen and Littlejohn—who, along with McDonald, composed the initial list of finalists—had declined the mayor's offer. Defendants argue that McDonald never had a constitutionally protected property interest in a potential position of employment with the City.

To recover under § 1983, a plaintiff must prove "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." Shrum ex rel. Kelly v. Kluck, 249 F.3d 772, 777 (8th Cir. 2001) (citing Bd. of Cnty. Comm'rs. v. Brown, 520 U.S. 397, 403-04 (1997)). "Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated." Dover Elevator Co. v. Ark. State Univ., 64 F.3d 442, 445-46 (8th Cir. 1995) (citing Carolan v. Kansas City, 813 F.2d 178, 181 (8th Cir. 1987)).

"The possession of a protected life, liberty or property interest is a condition precedent to the government's obligation to provide due process of law, and where no such interest exists, there can be no due process violation." Dobrovolny v. Moore, 126 F.3d 1111, 1113 (8th Cir. 1997) (citing Movers Warehouse, Inc. v. City of Little Canada, 71 F.3d 716, 718 (8th Cir. 1995)). Property interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972); see also Craft v. Wipf, 836 F.2d 412, 417 (8th Cir. 1987) (citations omitted) (noting that "[a] state may also create a constitutionally protected interest by establishing statutory or regulatory measures that impose substantive limitations on the exercise of official discretion."). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577; see Schueller v. Goddard, 631 F.3d 460, 462-63 (8th

Cir. 2011) ("A protected property interest exists where a plaintiff has a legitimate claim of entitlement to a benefit that is derived from a source such as state law.") (citations and internal quotations omitted).

Viewing the record in the light most favorable to McDonald, we conclude that McDonald had no protected property interest in the director position. The resolution naming the selection committee indicated that "the City *should* engage in a community process in order to select a director," that the selection committee would "oversee said community process," and that the selection committee would "recommend to the Mayor a list of finalists." McDonald's App'x 261 (emphasis added). The statement on the City's website indicated that the director "will be vetted through a community selection process *similar* to that for the City's police and fire chiefs." McDonald's App'x 264 (emphasis added). The St. Paul Code of Ordinances, which outlines the mayor's appointment power, requires that "[t]he mayor shall appoint, with the advice and consent of the council, to the positions of city attorney and all heads of executive departments, which appointees shall serve at the mayor's pleasure, except as provided otherwise in this Charter." St. Paul Code of Ordinances, Sec. 3.01.3. Nothing in the resolution or the statement concerning appointment of the director or in the ordinance concerning the mayor's general appointment power mandated defendants to strictly apply the sections of the City Charter governing the selection of police and fire chiefs, precluded the selection committee from certifying additional finalists,[4] or prohibited the mayor from

_____

[4]Councilmember Carter's alleged statement at the community forum that one of the three finalists certified at that time would become the director does not alter this conclusion. See McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir. 2001) (noting that "even if the Chief at one time intended to promote [plaintiff] and even if he expressed that intention as a promise, the City's broad discretion in matters of promotion, granted by statute, prevent that promise from ripening into an entitlement.") (citations omitted). The ordinance governing the mayor's appointment power required mayoral appointment and city council approval as pre-requisites to assuming the position of director.

considering additional finalists certified by the selection committee. To the contrary, the statement, resolution, and applicable ordinance left considerable discretion to the selection committee in certifying finalists, the mayor in appointing from a list of finalists, and the city council in approving the mayor's selection. Even if the mayor was constrained to appoint from the initial list of three finalists, the fact that an appointment from that list still would have been subject to the approval of the city council prevents McDonald from possessing a legitimate claim of entitlement to the director position. See Roth, 408 U.S. at 577; Schueller, 631 F.3d at 462-63. Accordingly, we affirm the district court's grant of summary judgment to defendants on McDonald's due process claims.

B. Equal Protection

McDonald claims that the City and the mayor violated his right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and under the Minnesota Constitution.[5] McDonald alleged in his complaint that defendants violated his right to equal protection "because of his engagement in protected activity," *i.e.* his 2003 lawsuit against the City and various city officials. Compl. ¶ 33. He did not assert a racial discrimination claim arising from his status as an African-American.[6]

---

[5]The Minnesota Court of Appeals has explained that "'[e]qual protection is an inherent but unenumerated right found and confirmed in Minnesota's state constitution.'" Studor, Inc. v. State of Minn., 781 N.W.2d 403, 408 (Minn. Ct. App. 2010) (quoting Murphy v. Comm'r of Human Servs., 765 N.W.2d 100, 106 (Minn. Ct. App. 2009)).

[6]We note that McDonald did raise the issue of race in his depositions and some subsequent motions and arguments, including his appellate brief, but our consideration of his equal protection claim is limited to the retaliation theory asserted in his complaint.

"In general, the Equal Protection Clause requires that state actors treat similarly situated people alike." Ganley v. Minneapolis Park and Recreation Bd., 491 F.3d 743, 747 (8th Cir. 2007) (quoting Bogren v. Minnesota, 236 F.3d 399, 408) (8th Cir. 2000)). As a threshold matter, McDonald must demonstrate that the defendants treated him differently than similarly situated candidates. Ganley, 491 F.3d at 747; see State v. Cox, 798 N.W.2d 517, 521 (Minn. 2011) (noting that "to establish that [plaintiff] has been denied equal protection of the laws, [plaintiff] must show that similarly situated persons have been treated differently") (citation omitted). If he satisfies this threshold inquiry, McDonald must then demonstrate intentional or purposeful discrimination. See Cent. Airlines, Inc. v. United States, 138 F.3d 333, 335 (8th Cir. 1998).

Defendants contend that McDonald presented no evidence that he was denied the director position because of his 2003 lawsuit. In response, McDonald notes that various individuals involved in the director selection process were members of the city council or employed by the City in 2003. Specifically, McDonald notes that Kimberly, against whom McDonald had filed a workplace conduct complaint during his employment with the City, served on the selection committee. But Kimberly recused herself from McDonald's interview, and despite Kimberly's participation on the selection committee, the committee ultimately certified McDonald as a finalist for the director position. The mayor retained the power to appoint from the list of finalists, and there is no evidence that the mayor's decision to appoint Frias rather than McDonald was influenced by McDonald's lawsuit against the City and its officials or by McDonald's workplace-conduct complaint against Kimberly in 2003. Because McDonald has not presented evidence that he was treated differently from similarly situated candidates or that he was the victim of intentional or purposeful discrimination, his equal protection claim fails as a matter of law.[7]

---

[7]McDonald stated in his interrogatory answers that defendants violated his right to equal protection by failing to appoint him director after Jensen and Littlejohn had

C. Conspiracy

McDonald claims that defendants violated 42 U.S.C. § 1985(3) by "conspir[ing] to deny Plaintiff an employment opportunity with a public institution because of his engagement in protected activity," thus "depriv[ing] Plaintiff, directly or indirectly, of due process and equal protection of the laws, and of the privileges and immunities secured to Plaintiff under the laws of the United States." Compl. ¶ 39. McDonald stated in an interrogatory answer that the alleged conspiracy was based on the fact that the mayor did not appoint him director "because of the work place conduct complaint [McDonald] had filed against the city." Defs.' App'x 32.

To establish a conspiracy under § 1985(3), McDonald must prove: (1) the existence of a conspiracy; (2) that the purpose of the conspiracy was to deprive him of his civil rights; (3) an act in furtherance of the conspiracy; and (4) injury. Andrews v. Fowler, 98 F.3d 1069, 1079 (8th Cir. 1996) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)). McDonald also "must show that the conspiracy is fueled by some 'class-based, invidiously discriminatory animus.'" Id. (quoting Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993)).

We conclude that McDonald's assertion that defendants conspired against him to deprive him of the director position because of his previous complaint against the City does not demonstrate a class-based invidiously discriminatory animus. We agree with our sister circuits that have held that status as a whistleblower does not entitle one to protection under § 1985. See Bryand v. Military Dep't of Miss., 597 F.3d 678, 687 (5th Cir. 2010) (holding that "status as a whistleblower does not entitle [plaintiff]

declined the mayor's offer. As explained above, however, defendants were not bound to apply section 12.12.3 of the City Charter to the selection of the director. No equal protection violation occurred as a matter of law.

to protection under § 1985(2)"); Childree v. UAP/GA AG CHEM, Inc., 92 F.3d 1140, 1147 (11th Cir. 1996) (declining "to apply § 1985(3) to whistleblowers as a class"); Hicks v. Resolution Trust Corp., 970 F.2d 378, 382 (7th Cir. 1992) (holding that "status as a 'whistleblower' does not entitle [plaintiff] to civil rights protection under §§ 1985(3) and 1986" because whistleblowers "do not possess any of the characteristics—i.e. race, national origin or gender—which are traditionally part and parcel of discrete and insular minorities") (citations omitted). Thus, we affirm the district court's grant of summary judgment to defendants on McDonald's conspiracy claim.

D. Title VII and MHRA Reprisal

McDonald alleges that defendants violated Title VII by "den[ying] and interfer[ing] with Plaintiff's attempt to avail himself to and benefit from an employment opportunity with a public institution because of his engagement in protected activity," in violation of 42 U.S.C. § 2000(e) *et seq.*, and by "retaliat[ing] against Plaintiff because Plaintiff is an individual who has engaged in protected activity," in violation of 42 U.S.C. § 2000e-3(a). Compl. ¶¶ 42, 45. He also asserted that defendants violated the MHRA, Minn. Stat. § 363A.15, by "intentionally engag[ing] in a reprisal against Plaintiff because Plaintiff had asserted his rights previously under Minn. Stat. § 363A *et seq*." Compl. ¶ 51. In his interrogatory answers, McDonald asserted that the factual basis for these claims consists of his not being appointed to the director position because of his 2003 whistleblower complaint.

McDonald's Title VII and MHRA retaliation claims are properly analyzed under the McDonnell Douglas burden-shifting framework. See Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1077 & n.3 (8th Cir. 2010) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)); Hoover v. Norwest Private Mortg. Banking, 632 N.W.2d 534, 548 (Minn. 2001) ("A reprisal claim is analyzed under the McDonnell Douglas burden-shifting test.") (citation omitted). Under that framework, "an

-11-

employee has the initial burden of establishing a prima facie case of retaliation." Fercello, 612 F.3d at 1077 (citing Kasper v. Federated Mut. Ins. Co., 425 F.3d 496, 502 (8th Cir. 2005)). To establish a prima facie case of retaliation, an employee must show:

> (1) she engaged in protected conduct; (2) she suffered materially adverse employment action, action that would deter a reasonable employee from making a charge of employment discrimination or harassment; and (3) the materially adverse action was causally linked to the protected conduct.

Id. at 1077-78 (citing Weger v. City of Ladue, 500 F.3d 710, 726 (8th Cir. 2007)).

The district court properly held that McDonald cannot demonstrate a prima facie case of retaliation under either Title VII or the MHRA. McDonald presented no evidence that the mayor's decision not to appoint McDonald was causally linked to McDonald's whistleblower claim, which was made more than five years earlier. See Tyler v. Univ. of Ark. Bd. of Trustees, 628 F.3d 980, 986-87 (8th Cir. 2011) (concluding that more evidence than mere temporal proximity was needed to create a genuine issue of material fact on causal nexus for a retaliation claim when a period of nearly three years passed between the protected activity and the alleged retaliatory act). McDonald alleges that a selection committee member asked McDonald a question about the whistleblower claim during his interview. There is no evidence, however, that this negatively influenced McDonald's application, for the selection committee ultimately certified McDonald as a finalist. Thus, summary judgment was properly granted to defendants on McDonald's Title VII and MHRA reprisal claims.[8]

---

[8]The district court also correctly declined to consider McDonald's unpleaded allegations of Title VII and MHRA gender discrimination, which were not raised until his opposition to defendants' motion for summary judgment. See N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004) ("[W]hile we recognize that the pleading requirements under the Federal Rules are relatively

E.  MHRA Aiding and Abetting

McDonald contends that the district court erred in granting defendants summary judgment on his claim that they violated Minn. Stat. § 363A.14 by aiding and abetting practices forbidden by the MHRA.  An underlying MHRA claim is a prerequisite to a claim of aiding and abetting violation of the MHRA.  See Minn. Stat. § 363A.14.  As discussed above, summary judgment was proper on McDonald's underlying MHRA reprisal claim.  Accordingly, we affirm the grant of summary judgment to defendants on McDonald's MHRA aiding-and-abetting claim.

F.  Title IX

In his complaint, McDonald alleges that defendants violated Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88, by "discriminat[ing] against [him] and . . . den[ying] and interfer[ing] with his attempts to participate in and avail himself to the benefits of a federally financed public institution because of his engagement in protected activity."  Compl. ¶ 48.  Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance . . . ."  20 U.S.C. § 1681(a); See Lam v. Curators of the Univ. of Mo., 122 F.3d 654, 656 (8th Cir. 1997) ("In order for sex discrimination to be actionable under Title IX, the discrimination must be connected with an 'education program or activity receiving Federal financial assistance.'") (quoting § 1681(a)).  Because McDonald did not present any evidence raising a genuine issue of material fact as to whether he was denied the director position on the basis of sex or whether any such discrimination was connected with an education

permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment.").

program or activity receiving federal financial assistance, summary judgment to defendants was proper on McDonald's Title IX claim.

G. Intentional Infliction of Emotional Distress

Under Minnesota law, a claim for intentional infliction of emotional distress requires proof of four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Langeslag v. KYMN Inc., 664 N.W.2d 860, 864 (Minn. 2003) (quoting Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983)). An intentional infliction of emotional distress claim is "'sharply limited to cases involving particularly egregious facts,'" and a "'high threshold standard of proof' is required to submit the claim to a jury." Id. (quoting Hubbard, 330 N.W.2d at 439). "Conduct is extreme and outrageous when it is so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Id. at 865 (internal quotations omitted).

McDonald's claim for intentional infliction of emotional distress does not meet the high threshold standard of proof required to submit such a claim to a jury. The mayor's decision to appoint Frias rather than McDonald to the director position does not constitute extreme and outrageous conduct as a matter of law, and McDonald has not identified any severe emotional distress suffered as a result of not being appointed to the position. Accordingly, we affirm the district court's grant of summary judgment to defendants on this claim.

H. Discovery Motions

McDonald also argues that the district court abused its discretion in denying his motions to compel the depositions of Mayor Coleman, councilmember Carter, and council President Landry. We cannot review McDonald's challenge to the magistrate

judge's[9] order denying this non-dispositive pre-trial motion because McDonald failed to file any objections to such order before the district court.  Under Rule 72(a) of the Federal Rules of Civil Procedure, after a magistrate judge issues a written order deciding a pretrial matter not dispositive of a party's claim, "[a] party may serve and file objections to the order within 14 days after being served with a copy."  Fed. R. Civ. P. 72(a).  "A party may not assign as error a defect in the order not timely objected to."  Id.  Because McDonald did not timely file timely objections before the district court, he may not challenge the order on appeal.  See Daley v. Marriott Int'l, Inc., 415 F.3d 889, 893 n.9 (8th Cir. 2005) (quoting Pagano v. Frank, 983 F.2d 343, 346 (1st Cir. 1993) ("[W]hen . . . a litigant could have tested a magistrate's ruling by bringing it before the district judge, but failed to do so within the allotted [now 14-day] period in Rule 72(a), he cannot later leapfrog the trial court and appeal the ruling directly to the court of appeals.")).

## IV.

The judgment is affirmed.

_____

---

[9]The Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota.