# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-4372

_____

Cara Williams; Johnita Slaughter; Mandre Miller; James Collier; Teresa Jones;
Chance Kenyon; Anthony Williams; Dwann Jones; Leroy Fields-Campbell;
Barbara Hansen, individually and on behalf of a putative class of similarly situated
individuals

*Plaintiffs - Appellants*

v.

Wells Fargo Bank, N.A.

*Defendant - Appellee*

------------------------------

National Employment Law Project

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: October 16, 2017
Filed: August 29, 2018

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

SMITH, Chief Judge.

The appellants are ten African Americans and Latinos who sued Wells Fargo Bank, N.A. ("Wells Fargo") on behalf of a putative class, alleging discriminatory employment practices in violation of Title VII and the Iowa Civil Rights Act. They seek reversal of the district court's[1] grant of summary judgment in favor of Wells Fargo. Specifically, the appellants argue that the court erred in concluding that they failed to establish a prima facie case of disparate impact. They also challenge the magistrate judge's[2] order granting in part and denying in part their Federal Rule of Civil Procedure 56(d) motion seeking additional time for discovery. We affirm.

## I. *Background*

Federal law bars "any person who has been convicted of any criminal offense involving dishonesty or a breach of trust" from becoming or continuing as an employee of any institution insured by the Federal Deposit Insurance Corporation (FDIC). 12 U.S.C. § 1829(a)(1)(A). More commonly known as Section 19, the statute does not consider the age of the convictions when applying the employment bar. *See Id.* § 1829(2)(A). In other words, an individual with a one-month-old disqualifying conviction is equally barred from FDIC-institution employment as a person with a

---

[*]This opinion is being filed by Chief Judge Smith and Judge Colloton pursuant to 8th Cir. Rule 47E.

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

[2]The Honorable Stephen B. Jackson, Jr., United States Magistrate Judge for the Southern District of Iowa.

thirty-year-old conviction. Violations of Section 19 can result in daily fines of up to $1,000,000 per day, five years' imprisonment, or both. *Id.* § 1829(b). Disqualified persons may apply for employment waivers with the FDIC. Banking institutions wishing to hire—or to continue to employ—Section 19-disqualified individuals also may sponsor waiver applications. No disqualified individual may begin or continue employment with the FDIC-insured institutions until after obtaining a waiver.

Wells Fargo is an FDIC-insured bank. Job applicants to Wells Fargo are required to answer whether they had a conviction of a crime involving dishonesty.[3] Starting in 2010, Wells Fargo instituted a fingerprint-based background check for its current and potential employees. The background check returns all criminal convictions, regardless of the age of the crime. In 2012, Wells Fargo re-screened its entire Home Mortgage division. Wells Fargo asked its employees for authorization to re-screen and again asked the employees to answer whether they had convictions involving crimes of dishonesty. The bank then terminated the Home Mortgage employees verified to have Section 19 disqualifications. Wells Fargo did not inform the terminated employees of the availability of Section 19 waivers, and it did not offer to sponsor waivers for any individual. Between December 2011 and March 2013, Wells Fargo terminated at least 136 African Americans, 56 Latinos, and 28 white employees because of Section 19 disqualifications. Between February 2013 and November 2015, Wells Fargo also withdrew at least 1,350 conditional job offers to African Americans and Latinos and 354 non-minorities after the background check revealed these individuals had disqualifying convictions.

The appellants sued, alleging race-based employment discrimination under Title VII of the Civil Rights Act of 1964, as well as violations under the Iowa Civil

---

[3]Wells Fargo does not offer employment to applicants who answer "Yes" to the question. Thus, all Wells Fargo employees and individuals with conditional job offers pending background checks answered that they had no convictions involving crimes of dishonesty.

Rights Act. They alleged that Wells Fargo's policy of summarily terminating or withdrawing offers of employment to any individual with a Section 19 disqualification discriminated against them. Prior to merits discovery, Wells Fargo moved for summary judgment. The appellants filed a motion requesting additional time to conduct discovery under Federal Rule of Civil Procedure 56(d), and the magistrate judge partially granted and partially denied the motion. The district court then granted summary judgment to Wells Fargo, concluding that the appellants failed to establish a prima facie case under any theory of employment discrimination pursuant to either federal or state law.

## II. *Discussion*

The appellants now contend that the district court erred in granting summary judgment to Wells Fargo, arguing that the district court misapplied disparate-impact law. Additionally, they challenge the magistrate judge's ruling on their Rule 56(d) motion.

## A. *Title VII Disparate Impact*

Ultimately, at issue in this case is whether the appellants had established a prima facie case of Title VII disparate impact, and if they had, whether Wells Fargo failed to show a business necessity defense. The appellants contend that Wells Fargo refused to adopt the alternative practices of giving advance notice of the need for a waiver, granting leave to seek a waiver, and providing direct sponsorship of a waiver. They argue that Wells Fargo sometimes took these steps, and that if the company had done so uniformly, then the alternative practice would have reduced the disparate impact caused by the summary exclusions. On this record, we disagree.

We review grants of summary judgment de novo. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citation omitted). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)(2)). We view facts in the light most favorable to the nonmoving party, and we make no determinations of credibility; nor do we weigh the evidence or draw inferences, as those functions belong to the jury. *Id.* (citations omitted). However, "[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Menz v. New Holland N. Am., Inc.*, 507 F.3d 1107, 1110 (8th Cir. 2007) (quoting *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007)). We may affirm "on any basis supported by the record." *Id.* (citation omitted).

> Under Title VII,

> an unlawful disparate impact is established under that statute "only if," as relevant here, "a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race . . . and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity."

*Bennett v. Nucor Corp.*, 656 F.3d 802, 817 (8th Cir. 2011) (ellipsis in original) (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)). To satisfy the elements of a prima facie disparate impact claim, plaintiffs must demonstrate: "(1) an identifiable, facially-neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two." *Mems v. City of St. Paul*, 224 F.3d 735, 740 (8th Cir. 2000) (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)), *abrogated on other grounds*, *Torgerson*, 643 F.3d at 1059.

The appellants claim that the district erroneously concluded that they failed to establish a prima facie case of disparate impact. They assert that they presented sufficient statistical evidence to show the disparity between white and non-white

Wells Fargo employees and potential employees and that Wells Fargo failed to show a business necessity. We disagree.

Once the complaining party shows that a particular employment practice or policy creates a disparate impact on a protected group, the employer carries the burden of demonstrating a business necessity to avoid violating Title VII. *See Bennett*, 656 F.3d at 817 (citing 42 U.S.C. § 2000e-2(k)(1)(A)(i)); *see also Mozee v. Am. Commercial Marine Serv. Co.*, 940 F.2d 1036, 1049 (7th Cir. 1991) ("[A]n employment practice that results in a disparate effect on a protected group might still survive Title VII if it is sufficiently job-related to constitute a business necessity." (citations omitted)). If the employer meets "its burden of producing evidence that its employment practices are based on legitimate business reasons, the plaintiff must 'show that other tests or selection devices, without a similarly undesirable racial effect, would also serve the employer's legitimate interest in efficient and trustworthy workmanship.'" *Watson*, 487 U.S. at 998 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975)).

Here, African-American and Latino employees were terminated (or potential employees were not hired) at rates at least twice those of non-minorities. But even assuming that the disparate impact was caused by Wells Fargo's policy of uniformly applying Section 19, the district court correctly recognized that the bank's "sound business decision was to terminate regardless of race or age or ethnicity." Slip op. at 4. Non-compliance with Section 19 could place Wells Fargo at risk of daily fines of $1 million. Further, "any bank or other financial institution wisely would prefer for its customers to be served by employees who were not pre[v]iously persons convicted of crimes of dishonesty." *Id.* In our view, Wells Fargo's policy of summary employment exclusion following a Section 19 disqualification is a business necessity. *See Ricci v. DeStefano*, 557 U.S. 557, 578 (2009) ("An employer may defend against liability by demonstrating that the practice is 'job related for the position in question and consistent with business necessity.'" (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)).

The appellants argue that, rather than summary terminations, had Wells Fargo adopted the alternative practices of giving advance notice of the need for a Section 19 waiver, granting leave time to seek a waiver, and/or sponsoring a waiver, these practices could have ameliorated the disparate impact. But other than the assertion, the appellants present insufficient evidence or statistics showing that these alternative practices would have reduced the disparate impact on people of color. The appellants present statistics showing that the FDIC's waiver approval rate can reach nearly 100 percent, especially when sponsored by the employer. However, the data does not advance the appellants' argument. The appellants point to publicly available data showing a 99 percent *fully adjudicated* waiver approval rate. But they fail to note that the FDIC regularly declines to approve applications by terminating the waiver process, unless a waiver applicant specifically requests a public denial. Taking these withdrawals into account, the FDIC waiver approval percentage is approximately 57 percent. *See* Appellee's Br. at 9. Further, while sponsored waivers may fare better, the appellants also present no data that the sponsored waivers ameliorated racial disparity. *Cf. Jones v. City of Bos.*, 845 F.3d 28, 36 (1st Cir. 2016).

The statistics do not support the inference that any of the alternative practices put forward by the applicants would result in proportionally more non-white employees receiving waivers and thereby reduce the disparate impact. Without meaningful evidentiary support for their contention, the appellants' argument fails. *See Albemarle Paper Co.*, 422 U.S. at 425 ("If an employer does . . . meet the burden of proving that its tests are 'job related,' it remains open to the complaining party to show that other tests or selection devices, without a similarly undesirable racial effect, would also serve the employer's legitimate interest in 'efficient and trustworthy workmanship.'" (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973))).

On this record and upon de novo review, we hold that even if Wells Fargo's policy of summarily terminating or not hiring any Section 19 disqualified individual creates a disparate impact, the bank's decision to comply with the statute's command is a business necessity under Title VII.[4] *See Ricci*, 557 U.S. at 587 ("[An employer] could be liable for disparate-impact discrimination only if [its employment policies] were not job related and consistent with business necessity, or if there existed an equally valid, less-discriminatory alternative that served the [employer's] needs but that the [employer] refused to adopt." (citing 42 U.S.C. § 2000e-2(k)(1)(A), (C))).

## B. *Rule 56(d) Motion*

The appellants also challenge the magistrate judge's partial denial of their motion seeking additional discovery under Federal Rule of Civil Procedure 56(d). We review Rule 56(d) denials for an abuse of discretion. *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 (8th Cir. 2014) (citations omitted). However, when an appellant fails to file objections to the magistrate judge's order before the

---

[4]The National Employment Law Project (NELP) urges us to consider this case not in isolation but within the "stark real-world context and the public policy concerns it presents." Amicus Curiae's Br. at 12 (bold omitted). But we may not do what the NELP asks us to do. "[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines . . . ." *United States v. Fogarty*, 692 F.2d 542, 547 (8th Cir. 1982) (ellipsis in original) (quoting *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)). As Wells Fargo points out, federal and state legislatures imposed collateral consequences for persons with convictions for crime of dishonesty by excluding these individuals from more than 400 jobs. Appellee's Br. at 41–42 (citing the ABA National Inventory of Collateral Consequences of Conviction.). In this context, "judicial self-restraint is especially appropriate where as here the challenged classification entails legislative judgments on a whole host of controversial medical, scientific, and social issues." *Fogarty*, 692 F.2d at 547 (citing *Marshall v. United States*, 414 U.S. 417, 427 (1974); *United States v. Kiffer*, 477 F.2d 349, 352 (2nd Cir. 1973)). These arguments are more appropriate before Congress, not the courts.

district court, we cannot review the order on appeal. *McDonald v. City of Saint Paul*, 679 F.3d 698, 709 (8th Cir. 2012) (citing *Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 893 n.9 (8th Cir. 2005)). Here, the record shows that after the magistrate judge issued the Rule 56(d) order, the appellants did not object. Because the appellants failed to test the magistrate judge's pre-trial motion ruling before the district court, they cannot now leapfrog the district court and appeal the order directly to us. *See McDonald*, 679 F.3d at 709.

## III. *Conclusion*

Affirmed.

_____