# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1315
_____

Raymond Kvalvog, Individually and as Co-Trustees of the Heirs of Zachary and Connor Kvalvog; Katherine Kvalvog, Individually and as Co-Trustees of the Heirs of Zachary and Connor Kvalvog

*Plaintiffs - Appellants*

v.

Park Christian School, Inc., A Minnesota Corporation; Christopher Nellermoe; Kent Hannestad; Josh Lee; The State of Minnesota; Minnesota State Patrol; Rodney Eichens, Individually and as Employees of the Minnesota State Patrol; Matthew Langer, Individually and as Employees of the Minnesota State Patrol

*Defendants - Appellees*

Tim Kerr; Brian Cheney, Individually and as Employees of the Minnesota State Patrol

*Defendant*s

_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 20, 2022
Filed: May 4, 2023
_____

Before KELLY, WOLLMAN, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Zachary and Connor Kvalvog died in a car accident on the way to a school basketball tournament. Their parents bring claims under 42 U.S.C. §§ 1983 and 1985(2) against Park Christian School, Park Christian administrators, the State of Minnesota, the Minnesota State Patrol, and Minnesota State Patrol officers. The district court[1] dismissed their claims, and the Kvalvogs appeal. We affirm.

I.

Zachary Kvalvog and his brother, Connor, were driving to a basketball tournament for their school, Park Christian. The team drove in a three-car caravan: Park Christian assistant coach Tim Kerr and head coach Josh Lee each drove a car of players, with Zachary and Connor's car at the end. During the drive, Lee cut off a semi-truck, and the semi-truck encroached into the next lane. To avoid a collision, Zachary veered into the median, rolled, and crashed. Zachary and Connor died in the accident. The truck drove off.

Minnesota State Patrol Sergeant Rodney Eischens arrived at the scene to investigate. Sergeant Eischens prepared a Crash Reconstruction Report for the Minnesota State Patrol and found that Zachary's interaction with the semi-truck caused the accident.

Zachary and Connor's parents, the Kvalvogs, first sued Lee and Park Christian for wrongful death in Minnesota state court. The jury found that Lee was not negligent and that the unidentified semi-truck driver was the sole cause of the accident.

The Kvalvogs moved for a new trial, claiming that the verdict was not supported by the evidence. Their motion was denied. The Kvalvogs moved again

---

[1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

for a new trial, this time under Minnesota Rule of Civil Procedure 60.02(b) based on newly discovered evidence: that Park Christian coaches and administrators—including Park Christian Principal Christopher Nellermoe and then-President Kent Hannestad—had personal connections with Sergeant Eischens that led him to make false statements in his crash report and trial testimony. The Minnesota District Court denied the Rule 60.02(b) motion. The Minnesota Court of Appeals affirmed the state district court, and the Minnesota Supreme Court denied the Kvalvogs' petition for review.

The Kvalvogs then sued in federal court under §§ 1983 and 1985(2). Their § 1983 claims alleged that Sergeant Eischens violated their constitutional rights—and violated state laws and standards—because his bias toward Park Christian corrupted his investigation of the crash and later trial testimony.[2] The Kvalvogs also brought a § 1985(2) claim against Park Christian, Nellermoe, Hannestad, Lee, and Sergeant Eischens, alleging that they had conspired to obstruct justice in the jury trial.

The district court dismissed the Kvalvogs' complaint. The court found that it could review the Kvalvogs' claims because they surpassed the *Rooker-Feldman* jurisdictional hurdle. But considering the state court proceedings, collateral estoppel barred their § 1983 claims and, to some extent, their § 1985(2) claim. And even if the claims survived collateral estoppel, the district court determined that the § 1983 claims failed on qualified immunity grounds and the § 1985(2) claim failed on the merits.

We affirm the district court. We agree that *Rooker-Feldman* does not apply, and that collateral estoppel bars the § 1983 claim, and so decline to address qualified immunity. Like the district court, we are doubtful that the § 1985(2) claim survives

---

[2]The Kvalvogs also alleged that Captain Cheney and Colonel Langer violated these same rights in their supervision of Sergeant Eischens and his report.

collateral estoppel.[3]  But for the purposes of this appeal, we assume without deciding that we can reach the merits, and we find that § 1985(2) claim fails on the merits.

## II.

The Defendants first allege that the Kvalvogs' claims are barred by the *Rooker-Feldman* doctrine.  We review *de novo* whether *Rooker–Feldman* deprives the federal courts of subject matter jurisdiction.  *Minch Fam. LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 965 (8th Cir. 2010).

"The *Rooker-Feldman* doctrine provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments."  *Mosby v. Ligon*, 418 F.3d 927, 931 (8th Cir. 2005) (citation omitted).  "The doctrine applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court."  *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (cleaned up).  The district court found that *Rooker-Feldman* does not apply here because the Kvalvogs do not seek direct review of the state courts' decisions.  We agree.

The Kvalvogs are not seeking relief from an unfavorable state court decision.  The Kvalvogs request relief for the Defendants' allegedly illegal acts and omissions during the proceedings, not the state courts' judgment.  "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached . . . then there is jurisdiction."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (cleaned up).  However tenuous their claim, the Kvalvogs have cleared the *Rooker-Feldman* jurisdictional hurdle.

---

[3]The district court noted that the Kvalvogs' complaint left room for doubt as to whether the § 1985(2) claim was premised on additional allegations.  The district court declined to consider whether those extensive allegations plausibly identified other foundational facts.

## III.

We now turn to collateral estoppel. Collateral estoppel prevents relitigating issues "already decided in a different cause of action." *Ideker v. PPG Indus., Inc.*, 788 F.3d 849, 852 (8th Cir. 2015) (citation omitted). We consider the district court's grant of collateral estoppel only as to the Kvalvogs' § 1983 claim. This determination is a mixed question of law and fact, which we review *de novo*. *Boudreau v. Wal-Mart Stores, Inc.*, 249 F.3d 715, 719 (8th Cir. 2001).

We apply Minnesota's collateral estoppel doctrine. *See Riis v. Shaver*, 4 F.4th 701, 703 (8th Cir. 2021). In Minnesota, collateral estoppel is appropriate when:

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Ill. Farmers Ins. Co. v. Reed*, 662 N.W.2d 529, 531 (Minn. 2003) (citation omitted). The Kvalvogs do not contest the third element—that they were a party to the prior adjudication—but otherwise argue that collateral estoppel is inapplicable to their claims. We now consider the first, second, and fourth elements.

## A.

We first look at whether the issue before us is identical to that in a previous adjudication. The Kvalvogs' Rule 60.02(b) motion before the state courts alleged that there was a personal connection between Sergeant Eischens and Park Christian which impacted the fairness and impartiality of Sergeant Eischens's investigation and trial testimony. This is identical to the issue that the Kvalvogs raise here.

B.

Next, we look at whether the denial of the Rule 60.02(b) motion is a final judgment on the merits. A final judgment "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *T.A. Schifsky & Sons, Inc. v. Bahr Const., LLC*, 773 N.W.2d 783, 788 (Minn. 2009) (citation omitted).

The Kvalvogs argue that the judgment was not "on the merits" because the issues raised in the Rule 60.02(b) motion were "immaterial to the judgment." Kvalvog Br. 19. But the state court did make a judgment on the merits. The state court considered whether Sergeant Eischens's relationship with Park Christian "made him biased, tainted his work as a reconstruction expert, and compelled him to perform his duties in a way that advanced the interests of PCS." *Kvalvog v. Lee*, No. 14-CV-16-4157 at *13 (Minn. Dist. Ct. Dec. 11, 2020). The court found that the Kvalvogs' evidence did not indicate a significant relationship and was "[nothing] more than impeachment material, and not even very powerful impeachment material at that." *Id.* at *14. It further held that "[t]here is nothing to suggest that there was a concerted effort on part of Sergeant Eischens to taint the entirety of the investigation in favor of PCS." *Id.* And after this decision, there was "nothing for the court to do but execute the judgment." *Schifsky*, 773 N.W.2d at 788 (citation omitted). The district court considered the relevant issues, so the denial of the Rule 60.02(b) motion was a final decision on the merits.

C.

The Kvalvogs also argue that they did not have an opportunity to litigate their claims fully and fairly. *See Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996) ("A party will be bound only if it had an adequate opportunity or incentive to obtain a full and fair adjudication in the first proceeding." (cleaned up)). The Kvalvogs argue that because Principal Nellermoe and Sergeant Eischens did not affirmatively disclose that they knew each other, the Kvalvogs never had an opportunity to conduct further discovery on their relationship.

But collateral estoppel merely looks to whether the Kvalvogs had the *opportunity* to litigate their claims fully and fairly. The Kvalvogs deposed Nellermoe, Hannestad, Lee, and Sergeant Eischens and conducted discovery that could have uncovered Sergeant Eischens's connections to Park Christian. The Kvalvogs had the chance to uncover this relationship, they just did not take advantage of it. *Simmons*, 77 F.3d at 1097 n.4 (finding that collateral estoppel does not require that the party actually took advantage of the opportunity to fully and fairly litigate the issue).

The Kvalvogs argue that the district court did not consider injustice when applying collateral estoppel. *See Nelson v. Am. Fam. Ins. Grp.*, 651 N.W.2d 499, 511 (Minn. 2002). They claim that collateral estoppel will chill the exercise of their First Amendment rights because it limits their ability to petition the government for redress of grievances. And they argue that an adverse judgment would deter future plaintiffs from bringing Rule 60.02(b) motions out of fear that it will prevent them from pursuing federal claims. But we do not hold that bringing a Rule 60.02(b) motion is a categorical bar to later litigation. Rather, since all the elements for collateral estoppel are met, the Kvalvogs cannot attempt to relitigate these particular issues. *See Ideker*, 788 F.3d at 854–55. The Kvalvogs are not allowed a second bite at the apple for the same underlying issues.

We find that the Kvalvogs' § 1983 claim is squarely barred by collateral estoppel, so we do not need to evaluate whether Defendants are entitled to qualified immunity.

IV.

We review the district court's dismissal of the § 1985(2) claim for failure to state a claim *de novo*. *Stockley v. Joyce*, 963 F.3d 809, 816 (8th Cir. 2020).

Section 1985(2) claims protect individuals against conspiracies seeking to interfere with the administration of justice with the intent to deny equal protection

-7-

of the law. *See* 42 U.S.C. § 1985(2); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1429 (8th Cir. 1986). The conspirators must have been motivated by a class-based, invidiously discriminatory animus. *See Harrison*, 780 F.2d at 1429. The Kvalvogs allege two grounds for why they are members of a protected class sufficient for § 1985(2) protection: (1) they were perceived as "lack[ing] religious zeal," Kvalvog Br. 47, and (2) they supported minority students at Park Christian.

Neither of these classifications qualifies as a protected class under § 1985(2). A perceived "lack [of] religious zeal" is not an immutable characteristic sufficient to qualify as a protected class. A class must possess the characteristics of a discrete and insular minority, like race, national origin, or gender. *McDonald v. City of Saint Paul*, 679 F.3d 698, 706–07 (8th Cir. 2012); *cf. id.* (rejecting a § 1985 claim when the purported class was "whistleblowers"). The Kvalvogs paying the school tuition for minority students is similarly insufficient. The alleged conspirators must be trying to hinder someone who is "lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws." § 1985(2). The alleged conspiracy here has nothing to do with their paying the tuition of minority students. And, further, "[w]hatever may be the precise meaning of a 'class' . . . the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the [] defendant disfavors." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993).

V.

For the reasons stated above, we affirm the district court.

KELLY, Circuit Judge, concurring in part and concurring in the judgment.

In deciding whether the Kvalvogs satisfied the requirements for relief from a final judgment under Minnesota's rules of civil procedure, see Minn. R. Civ. P. 60.02, the state trial court did not, in my view, adjudicate the factual issues at the

core of this federal civil rights case. See Bender v. Bernhard, 971 N.W.2d 257, 263 (Minn. 2022) (describing the relevant inquiry under Rule 60.02(b) as "balanc[ing] the systemic need for finality of judgments against circumstances when an injustice is likely to result if newly discovered evidence is not considered"); cf. Carter v. Anderson, 554 N.W.2d 110, 113 (Minn. Ct. App. 1996) (explaining that Rule 60.02 provides relief from judgments under "very specific" and "narrowly defined" circumstances). At a minimum, it did not do so in a manner that was "necessary and essential to the . . . judgment in that action." Hauschildt v. Beckingham, 686 N.W.2d 829, 837 (Minn. 2004). Accordingly, I do not believe the plaintiffs' § 1983 claims are barred by collateral estoppel.

However, I agree with the district court that the Kvalvogs have not adequately pleaded a due process or equal protection violation. And given the circumstances of this case and its extensive procedural history in state court, I also believe the plaintiffs have failed to plead the sort of "substantial impediment to meaningful access to the courts" that is essential to a plausible denial-of-access claim. Alexander v. Macoubrie, 982 F.2d 307, 308 (8th Cir. 1992) (per curiam). I would therefore affirm the district court's dismissal of the Kvalvogs' § 1983 claims on these alternative grounds.[4]

_____

---

[4]I concur in the remainder of the court's opinion.